**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
HARRISONBURG Division

Case #: 5:22-cv-00035

---

**WENDY PRINCE,** individually, and on
behalf of all others similarly situated,

Plaintiff,

v.

**JOHNSON   HEALTH   TECH   NORTH
AMERICAN, INC.**

Defendant.

---

### CLASS ACTION COMPLAINT

The allegations made in this Class Action Complaint ("Complaint') are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

### INTRODUCTION

1.     Plaintiff Wendy Prince ("Plaintiff") brings this proposed class action on behalf of herself and similarly-situated purchasers (the "Class Members") of Johnson Health Tech North American, Inc., treadmills through its brand Horizon Fitness ("Horizon" or "Defendant"), challenging the conduct of Horizon in the false advertising, misleading marketing, and sales of its

1

personal fitness treadmills (the "Treadmills"),[1] which are manufactured, developed, marketed and sold for household use under the Horizon brand name. The Treadmills are incapable of reaching and maintaining Horizon's overstated and inflated continuous horsepower representations during normal designed household exercise use. Plaintiff seeks damages and equitable relief on behalf of herself and all others similarly situated.

2.      Treadmill motor horsepower rating is one of the most prevalent and recognized specifications a consumer compares when purchasing a treadmill.  Horizon marketed that the horsepower delivered by the motor can directly affect the quality of the Treadmills' performance and thus a reasonable consumer's purchasing decision. Horizon deceitfully touted excessive continuous horsepower capabilities with false and misleadingly inflated continuous horsepower ratings intended to induce consumers into purchasing the Treadmills and paying an inflated premium price based on the horsepower misrepresentations.

3.      Horizon misled consumers into believing that the Treadmills actually generate and maintain the represented continuous horsepower, even though the horsepower misrepresentations can never be obtained during actual household use by the Plaintiff and consumer Class Members. Horizon manufactures, develops, markets, distributes, and sells a variety of treadmill models throughout the country, including the Treadmills that Plaintiff and Class Members have purchased. Based on the horsepower misrepresentations, Horizon charged a premium price for the Treadmills' misrepresented horsepower capabilities which are not actually available during household usage.

4.      At the time of Plaintiff's purchase, Horizon made numerous representations on its website (https://www.horizonfitness.com/treadmill), in marketing materials, and through other

---

[1]      Defendant manufactured, advertised, marketed and sold multiple treadmill models during the relevant time period with similar horsepower misrepresentations, including but not limited to, Horizon 7.0 AT (3.0 CHP), Horizon 7.4 AT (3.5 CHP), Horizon 7.8 AT (4.0), Horizon T101 (2.5 CHP), Horizon T202 (2.75), and Horizon T303 (3.0 CHP).

third party retailers, including online retailers, such as Dick's Sporting Goods ("Dick's") and Amazon.com, namely that its Treadmills had a specific power output, quantified in continuous horsepower ("CHP"). The Treadmills cannot produce, let alone maintain continuously, their marketed and advertised continuous horsepower during household usage.

5.      Horizon maintains an authorized sales and distribution partnership with Amazon.com, as well as maintaining an Amazon "Horizon Fitness Store".  Through Amazon.com, the world's largest e-commerce marketplace , Horizon marketed the same horsepower capability misrepresentations as it makes on its own website, marketing and advertising.

6.      In addition to online sales through Amazon.com and directly through https://www.horizonfitness.com, Horizon sells its exercise equipment products at Dick's, the nation's largest sporting goods retailer. Horizon treadmills are sold at most of Dick's approximately 720 retail sporting goods store locations, in 47 states throughout the country.

7.      Amazon.com, Dick's, and other third-party retailers, act as authorized agents of Defendant in the marketing, sale and distribution of Treadmills.

8.      During the relevant time period Horizon consistently and prevalently advertised and marketed that the Treadmills operate at a continuous horsepower of between 2.5 CHP and 4.00 CHP, depending on the specific treadmill model.  On information and belief, *all* Horizon treadmills operate in household use well below Horizon's continuous horsepower representations and maintain similar continuous horsepower regardless of the misrepresented CHP.

9.      Horizon labeled the Treadmills with false and misleading horsepower ratings because such representations are highly material to consumers and serve to differentiate the Treadmills from the competition and justify a higher price. Reasonable consumers expect their Treadmills to generate and maintain the horsepower Horizon claims, but instead, Plaintiff and

Class Members' Treadmills only provide a small fraction of the horsepower promised by Horizon while exercising.

10.    Horizon's CHP representations are inaccurate, misleading, and materially overstate the Treadmills' true operating horsepower. It is not possible for the Treadmills to operate at a continuous horsepower of 4.0 CHP, or even 2.5 CHP, when drawing electrical power from the standard 120-volt, 15-amp outlet found in residential homes in the United States for which the Treadmills are designed.

11.    Horizon recognizes that consumers view a treadmill's power as one of the most important features in making a treadmill purchase for their home. Defendant specifically highlighted Horizon's claims concerning the Treadmills' horsepower in advertising, on its website, in its press releases, and at its point of sale marketing materials prominently displayed at Dick's stores and online by third-party retailers such as Amazon.

12.    Horizon's false and overstated horsepower representations are designed to mislead consumers into believing the Treadmills have much more power than they actually deliver, leading consumers to overpay for the Treadmills and/or cause consumers to purchase the Treadmills instead of competitor manufacturers' treadmills or less expensive models.

13.    Reasonable consumers like Plaintiff expect the Treadmills to produce the represented horsepower stated in and on Horizon's marketing materials, and/or website, during household operation and would not have purchased the Treadmills or would have paid less had they known that Defendant's representations regarding the Treadmills' CHP were false and misleading.

14.    Horizon's Treadmills are worth substantially less than what Plaintiff and Class Members paid to purchase them.

15.     After Horizon was notified by Plaintiff's counsel in this case of its false and misleading marketing, it immediately deleted from its website of all references to the deceptive claims in an obvious attempt to skirt liability.

16.     Plaintiff suffered damages resulting from Horizon's actions and omissions. Accordingly, Plaintiff brings this class action asserting claims against Defendant for violations of consumer protection and false advertising statutes, breaches of express and implied warranties, and negligent misrepresentations.

## JURISDICTION

17.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because Johnson Health Tech North American, Inc. is incorporated as a Wisconsin corporation, has its headquarters there, and is therefore a citizen of the State of Wisconsin; Plaintiff, Wendy Prince is a citizen of the State of Virginia, and purchased a Horizon Treadmill on the Horizon website while located in the State of Virginia; there are more than 100 class members in many different states throughout the country; and the aggregate amount in controversy exceeds $5 million.

18.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

19.     Plaintiff purchased a Horizon 7.8AT Treadmill online directly from Horizon's website, www.Horizon.com, on or about November 8, 2020, for the purpose of using the Treadmill for personal exercise use in her home located in Shenandoah, Virginia. After purchasing her Treadmill, Plaintiff used her Treadmill for its ordinary intended use within her home and has not

received the CHP that Horizon represented. Horizon's website expressly noted that the 7.8 AT Treadmill delivered 4.0 CHP.

20.     Before purchasing her Treadmill from Horizon, Plaintiff reviewed Horizon's website and Horizon's statements that the Horizon 7.8AT Treadmill was capable of producing 4.0 CHP when she was comparing the 7.8AT treadmill to other treadmill manufacturers. Horizon's representations and marketing stating that the 7.8AT series treadmill provides 4.0 CHP was a material factor considered in Plaintiff's purchase of her Treadmill. Plaintiff would not have purchased her Horizon treadmill or would have paid considerably less if she had known its true horsepower capabilities. Plaintiff believed that power was a material factor in the quality of treadmill she wished to purchase, that the CHP represented on Horizon's website indicated the power of the treadmill she would receive and would not have purchased her Treadmill or would have paid less but for the CHP representations on Horizon's website.

21.     Plaintiff paid $1,999.00 for her Horizon 7.8AT Treadmill on November 9, 2020 and has been damaged. After purchasing her Treadmill, and after delivery to her home, Plaintiff used her Treadmill for ordinary use within her home and has not received the CHP that Defendant represented.

22.     Defendant Johnson Health Tech North American, Inc. ("Johnson Health") is a Wisconsin corporation, headquartered in Cottage Grove, Wisconsin.  "Johnson Health Tech is the world's largest specialty fitness retailer, operating more than 460 locations in Asia, Europe and the Americas."[2] Johnson Health develops, markets and sells fitness equipment for residential use, including treadmills, elliptical, rowers, and bikes.  Johnson Health is in the business of developing, marketing and selling exercise equipment throughout North America in interstate commerce and

---

[2]     https://www.johnsonhealthtech.com/us/eng/global-by-design/retail-distribution (last accessed May 25, 2002).

continues to expand its presence in the US and internationally.[3] In 2008, Johnson Health merged with Horizon Fitness, Inc. and continued selling and marketing treadmills under the Horizon brand.

## STATEMENT OF FACTS

### I.    Horsepower Overview

23.    Horsepower is a unit of measurement of power or the rate at which mechanical energy is expended and is often used to quantify the mechanical power output of a motor or an engine.

24.    The "horsepower" measurement of power was adopted in the late 18th century by Scottish engineer James Watt to compare the output of steam engines with the power of draft horses. In describing electric power under the metric system, the term "watt" is now commonly used instead of horsepower as a measure of mechanical power output performed by a motor. One unit of horsepower equals approximately 746 watts.

25.    The amount of mechanical power output generated by any given electric motor can be determined by examining that electrical voltage available to it and the amperage that the motor is capable of drawing. To calculate an electric motor's operating horsepower, voltage is multiplied by amperage and then by a fraction representing the efficiency of the motor. That total is then divided by 746 watts to convert the watts to horsepower.

26.    A simple equation thus describes how to calculate horsepower by multiplying the available voltage, amperage draw, and motor efficiency, and dividing that product by 746 (to convert into horsepower as measured by wattage):

---

[3]    Johnson Health has a wide range of health fitness brands in addition to Horizon, including entities doing business as Matrix, Vision Fitness, Synca Welness, Fujiiryoki, and Tempo Fitness.

$$\frac{(\text{Voltage}) \times (\text{Amperage}) \times (\text{Motor Efficiency})}{746} = \text{HP}$$

27.     Most electrical outlets in American homes are equipped with the standard 15-amps, with two slots and a U-shaped grounding third hole and have an accompanying 120-volt circuit. A 15-amp circuit is usually served by 14-gauge wire and is protected by a 15-amp circuit breaker or fuse based on building and electrical codes.

28.     Defendant's Treadmills are rated at 15 amps with a 110-volt circuit, which equates to a theoretical maximum mechanical power output of 1,650 watts or 2.21 horsepower output without taking into consideration the motor's actual efficiency[4] and power factor losses, which further decrease the motor's horsepower output. Heat and other factors decrease the motor's efficiency, and therefore further decrease the power output of the motor while in actual use.

29.     After factoring the effects of the power factor and efficiency losses, Defendant's Treadmills are capable of providing only a fraction of the advertised CHP that Defendant markets its Treadmills as capable of providing while in household use.

30.     It is beyond the safety rating for an electrical device to draw more power than the receptacle and household electrical circuit is designed for. If an electrical device does draw more power than the household electrical circuit is designed for, the circuit-breaker will flip and cut off power to that circuit. As such, Defendant's treadmills are incapable of drawing more power than a household outlet is capable of providing during actual household use.

31.     In addition to the power input limits available during household use, the Treadmills themselves are equipped with an electronic control board that regulates the amperage draw and

---

[4]     Electric motor efficiency is the measure of the ability of an electric motor to convert electrical energy to mechanical energy.

further limits the horsepower capabilities to well below Defendant's continuous horsepower representations for the Treadmills.

32.   Defendant's Treadmills are only capable of producing a fraction of the misrepresented CHP due to the Treadmill's onboard electrical circuit breaker, as well as common household electrical limits found in households throughout the United States.

33.   To be true, Horizon's horsepower representations would have to defy the laws of physics and allow Horizon's Treadmills to produce more CHP than the Treadmills are actually capable of producing from a common household outlet power source in the United States and for which the Treadmills are rated and marketed. Based on Horizon's misleading horsepower representations, Defendant's Treadmills purportedly produce more CHP than possible from the actual energy input from a household outlet receptacle.

## II.   Continuous Horsepower

34.   Horizon marketed and sold the Treadmills as maintaining a certain "continuous horsepower," or "continuous duty horsepower." CHP can be defined as a measurement of the motor's ability to maintain and continuously produce power over an extended period of time without exceeding the current rating of the motor.

35.   CHP is often considered to be the most accurate indicator of a motor's power output because, as Defendant states, a "continuous duty motor measures the minimum horsepower delivered at all points during a workout, and is a commercial grade standard applied to treadmills used in health clubs and higher-quality home treadmills."[5]

---

[5]   https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (last accessed Oct. 24, 2019).

36. Horizon's authorized third-party sales partner, Dick's Sporting Goods, represented that "*CHP measures how much power the motor maintains throughout the workout*."[6]

37. The CHP associated with a particular treadmill is meant to define "*how much power is maintained throughout the workout*."[7]

38. The CHP associated with a treadmill is the "*measure of sustained power during regular use*. The continuous motor power is what is consistently delivered during heavy usage over an extended period of time."[8]

39. When assessing the CHP of a treadmill, "the measurement is taken over an extended period of time. *It shows that the motor can maintain the power it is rated for without lagging or slowing down under strain.*"[9]

40. The advertised CHP capabilities associated with Horizon's Treadmills are deliberate misrepresentations because the Treadmill motor is incapable of maintaining the stated CHP rating at any time during the consumer's workout. In fact, Horizon's Treadmills are not capable of achieving the advertised CHP at any time during a consumer's workout.

41. In order for Horizon to even come close to achieving the misrepresented horsepower capabilities of the Treadmills, Horizon bases its false and misleading horsepower representations on an inflated laboratory testing power draw (amperage) not possible in household use. The laboratory testing power input far exceeds the current rating of the Treadmill motors while in household use, and thus cannot be truthfully represented, by definition, as the Treadmills' CHP capabilities to Plaintiff and the Class Members.

---

6 https://protips.dickssportinggoods.com/sports-and-activities/exercise-and-fitness/how-to-choose-the-right-treadmill (emphasis added) (last accessed Jan. 30, 2020).

7 https://www.treadmillreviews.net/treadmill-motors-what-you-need-to-know/ (emphasis added) (last accessed Oct. 24, 2019).

8 https://treadmill-ratings-reviews.com/treadmill-articles/facts-about-treadmill-motors/ (emphasis added) (last accessed Oct. 24, 2019).

9 https://www.treadmillreviews.com/treadmill-buying-guide/ (emphasis added) (last accessed Oct. 24, 2019).

42.     Horizon's advertised CHP is a misleading power metric for a consumer to evaluate unless the motor is actually capable of attaining the CHP in actual use and under standard operating conditions. A reasonable consumer is led to believe that the CHP representations are actually achievable while in normal exercise use based on Horizon's horsepower misrepresentations. Reasonable consumers cannot properly evaluate the Treadmills' power metrics due to Horizon's misleading and false statements regarding the Treadmills' inflated CHP.

## III.    Horizon's CHP Misrepresentations and Misleading Statements

43.     Defendant promotes the Treadmills online and in numerous market outlets including its own treadmill blog. Defendant makes clear that "The treadmill horsepower rating is probably the single most recognizable spec that jumps out at a consumer when her or she begins to do their buying research."[10]

44.     Defendant's blog stated that, "Unless the treadmill has a strong motor, you will easily ear it out."[11]

45.     Defendant further states that horsepower "ratings and numbers can be very confusing and ultimately incredibly misleading."[12]

46.     Defendant listed the misrepresented 4.0 CHP Rapid Sync Motor for the 7.8 AT treadmill prominently on its website.[13]

47.     Focusing directly on the power capabilities of its 7.8 AT Treadmill, Defendant implored its customers to "Power your workouts with a 4.0 Continuous-Duty Horsepower motor

---

[10] https://web.archive.org/web/20201127170601/https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (last accessed June 1, 2022).

[11] https://web.archive.org/web/20200921071722/https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (emphasis added) (last accessed May 25, 2022).

[12] *Id.*

[13] https://web.archive.org/web/20200614212354/https://www.horizonfitness.com/horizon-7-8-at-treadmill (last accessed May 25, 2022).

and 500 lb thrust incline motor… Together, they create the most responsive drive system available on a treadmill"[14]

48.     Defendant described the 7.8AT Treadmill as "the ultimate runner's treadmill with our most powerful motor."[15]

49.     Defendant further stated that "Powerful, 4.0 CHP motor has 33% faster speed and incline changes, perfect for interval training."[16] Defendant's representations clearly indicate that the CHP is delivered to the consumer during continuous use.

50.     Defendant's Blog also explains that the "When shopping for a treadmill, look for a Continuous Duty Rating (CHP). A continuous duty motor measures the minimum horsepower delivered at all points during a workout and is a commercial grade standard applied to treadmills used in health clubs and higher-quality home treadmills…Continuous duty motors are the highest quality available…They are more powerful, they last longer, and they deliver smooth performance."[17]  Defendant clearly represented that the CHP is the treadmill power achieved in continual use during a runner's workout.

51.     In addition to Horizon's online advertising and marketing horsepower misrepresentations, Horizon's in-store floor model displays across the country at Dick's Sporting Goods prominently exhibit Horizon's CHP as a major selling feature

52.     In direct correlation to the misrepresented horsepower and the various treadmill models that Defendant offers, Defendant has priced the models according to the misleading CHP

---

[14]     *Id.*
[15]     https://web.archive.org/web/20200614212354/https://www.horizonfitness.com/horizon-7-8-at-treadmill (last accessed June 1, 2022).
[16]     https://web.archive.org/web/20200414041842/https://www.horizonfitness.com/horizon-7-8-at-treadmill (last accessed May 25, 2022).
[17]
https://web.archive.org/web/20200921071722/https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (last accessed June 1, 2022).

associated with each model, incrementally increasing the price premium based on successively higher CHP representations.

53.     Defendant's advertised CHP rating is fictitious when compared to the actual horsepower available in normal household operation. In order to achieve the misleading CHP output that Defendant claims the Treadmills are capable of achieving, the power input necessary when plugged into a consumer's household outlet would far exceed the actual capability of the electrical infrastructure found in American homes.

54.     The CHP misrepresentations made by Defendant are more than mere subjective promotional statements that could be considered advertising puffery. Defendant's CHP misrepresentations are an objectionably measurable and quantifiable metric that a reasonable consumer is drawn to believe is real and achievable when using the Treadmills for ordinary exercise use.

55.     At some point after Plaintiff purchased her Treadmill from Defendant's website, Defendant attempted to provide a surreptitiously hidden disclaimer on its website in a perfunctory attempt to clarify the continuous horsepower representations it has so prevalently misrepresented throughout the Class Period to Plaintiff and Class Members.[18]  The purported disclaimer states "*The stated motor Horsepower (HP) is based on measurement in a laboratory setting. It is an indication of the robustness of the motor and does not reflect the operational HP in home use, which is typically limited by home electrical systems."  This disclaimer was only provided after Defendant was notified by Plaintiff's counsel that it was deceiving consumers about its horsepower representations.

---

[18] https://www.horizonfitness.com/horizon-7-8-at-treadmill (last accessed May 25, 2022).

56.     Defendant's newly revealed disclaimer, buried in fine print on its website at the very bottom of its individual treadmill performance spec page, is inadequate, and fails to sufficiently notify a reasonable consumer as to the true operating horsepower capabilities of Defendant's Treadmills. Furthermore, the disclaimer fails to differentiate between stated horsepower and continuous duty horsepower.

## CLASS ACTION ALLEGATIONS

57.     It is believed that there are thousands of Class Members across the United States who have purchased Defendant's Treadmills.

58.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this lawsuit on behalf of themselves and a nationwide class (the "Nationwide Class" or "Class") defined as follows:

> All persons in the United States who purchased a Horizon treadmill, during the maximum period of time permitted by law, for personal, family, or household purposes, and not for resale.

59.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this lawsuit on behalf of herself and a Virginia-statewide class (the "Virginia Class" or "Subclass") defined as follows:

> All persons in the State of Virginia who purchased a Horizon treadmill, during the maximum period of time permitted by law, for personal, family, or household purposes, and not for resale.

60.     Plaintiff specifically excludes Defendant's current and former officers and directors, members of the immediate families of Defendant's officers and directors, Defendant's employees, Defendant's legal representatives, heirs, successors, and assigns, any entity in which Defendant has or had a controlling interest during the Class Period, Defense counsel and members of his/her immediate family, and the judicial officers to whom this lawsuit is assigned.

61.     The definitions of the Class and Subclasses are unambiguous, and Plaintiff is a member of the Class and Subclass she individually seeks to represent.

62.     Plaintiff reserves the right to amend or modify the Class and Subclass definitions and exclusions to create greater specificity, further division into subclasses, or limitation to particular issues as this case progresses.

63.     The Nationwide Class is so numerous and geographically dispersed that joining all Class members would be impracticable. The exact number of Class members is unknown by Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes that the Class numbers at least in the thousands.

64.     The Virginia Subclass is so numerous and geographically dispersed in Virginia that joining all the member would be impracticable. The exact number of members in the Subclass is unknown by Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes that the Subclass consists of at least 100 potential class members.

65.     Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Horizon treadmill that was sold with a misleading CHP rating and suffered a pecuniary loss as a result of the purchase. Plaintiff's claims have the same essential characteristics as all other Class members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Classes. All claims are based on the Defendant's course of conduct and similar legal theories. All Class members, including Plaintiff, suffered the same type of injury and possess the same interests in pursuing this case as does Plaintiff, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

66.     Plaintiff's claims are typical of the claims of the Subclass because Plaintiff purchased a Horizon treadmill sold with a misleading horsepower rating and suffered a pecuniary loss as a result of the purchase. The Subclass claims have the same essential characteristics as all

other Subclass members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Subclass. The Subclass claim is based on the course of conduct and similar legal theories. All Subclass members, including Plaintiff, suffered the same type of injury and possess the same interests in pursuing this case as do Plaintiff, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

67.     Plaintiff will fairly and adequately protect the interests of the members of the Class and the Subclass and has retained counsel competent and experienced in class action litigation.

68.     Defendant acted or refused to act on grounds generally applicable to the Class and the Subclasses, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole and the Subclass as a whole.

69.     Common questions of law and fact exist as to Class members' claims and Subclass members' claims and predominate over questions affecting only individual Class or Subclass members. Common legal and factual questions include, but are not limited to:

      a.     The nature of Horizon's promotion of CHP;

      b.     Whether Horizon misrepresented the CHP, and/or horsepower of the Treadmills;

      c.     Whether the Horizon's "continuous horsepower" claims were false and/or misleading;

      d.     Whether Horizon knew or should have known its claims regarding the Treadmills' horsepower were false and/or misleading;

      e.     Whether Horizon's representations were material to consumers and the market;

f.   Whether the Treadmills produce the represented "continuous horsepower" for any time material to consumer operation and use;

g.   Whether Horizon placed "continuous horsepower" ratings on the Treadmills' packaging and store displays;

h.   Whether Horizon provided point of sale materials to retailers for use in promoting Horizon's Treadmills and whether those materials included misleading references to CHP;

i.   Whether Horizon provided advertising copy or suggested promotional language to retailers for use in promoting Horizon's Treadmills and whether those materials included misleading references to CHP;

j.   Whether Horizon's CHP statements constituted contractual promises or warranties on the Treadmills;

k.   Whether Horizon's misleading representations caused it to receive money that it would not have received absent those representations;

l.   Whether Horizon's actions breached the duties it owed Plaintiff and the Class under express warranties for the Treadmills;

m.   Whether Horizon's actions breached the duties it owed Plaintiff and the Class under its implied warranties regarding the Treadmills;

n.   Whether Plaintiff and the Class paid more for the Treadmills than they would have paid absent Horizon's misleading horsepower representations;

o.   Whether Class members are entitled to damages, restitution, and/or monetary relief and if so, the amount and nature of such relief; and

70.     Resolution of each of these issues will turn upon evidence common to all Class and Subclass members.

71.     Resolution of issues common to all Class and Subclass members will predominate over individual issues.

72.     The issues common to the Class and the Subclass and the nature of the common relief creates a cohesive class for injunctive relief.

73.     Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

    a.     It will avoid a multiplicity of suits and consequential burden on the courts and Defendant;

    b.     It would be virtually impossible for all members of the Class and/or Subclass to intervene as Plaintiff in this action;

    c.     It would assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

    d.     It will provide court oversight of the claims process, once Horizon's liability is adjudicated;

    e.     It would permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and

f.    It will permit the adjudication of relatively small claims by certain Class members, who could not afford to individually litigate such claims against a large corporate entity such as Horizon.

74.    Plaintiff and the proposed Class and Subclasses satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

75.    Plaintiff is not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

## PRE-LAWSUIT NOTICE

76.    In a notice letter dated April 7, 2022, Plaintiff provided Defendant with proper pre-suit notice on behalf of Plaintiff and similarly situated putative class members before filing this lawsuit in an attempt to address Defendant's horsepower misrepresentations without court intervention and allow Defendant the opportunity to cure. Defendant Horizon acknowledged receipt of Plaintiff's notice letter in a May 5, 2022 letter from Horizon's legal counsel.

77.    Plaintiff's April 7, 2022 notice letter was sent within a reasonable time after she discovered or reasonably should have discovered that her Horizon treadmill did not produce the represented 4.0 CHP.

78.    In response to the April 7, 2022 pre-suit notice letter, Horizon indicated through its legal counsel that it fully stands behind its treadmill specifications and provided no indication that Defendant was willing to cure the treadmill horsepower misrepresentations.

## COUNT 1
### Breach of Express Warranty
### (on behalf of Nationwide Class)

79.    Plaintiff restates and incorporates all other allegations in this Complaint.

80.     Plaintiff and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

81.     Defendant represented on the Treadmills' packaging, on Horizon's website and on the websites of other third-party retailers, that the Treadmills had certain horsepower specifications, as noted herein, which Plaintiff and other consumers reviewed and relied on as truths asserted before purchasing their Treadmills.

82.     As detailed above, these representations are false and/or misleading, and the Treadmills Plaintiff and the Class members purchased do not conform to the above noted horsepower representations and cannot operate as promised during household usage.

83.     These representations constitute express warranties as to the Treadmills' qualities, nature and performance.

84.     These representations became part of the basis of the bargain for Plaintiff and the other Class members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of the Treadmills.

85.     Plaintiff and the Class would not have purchased the Treadmills absent Defendant's representations that the Treadmills would operate at 2.25 CHP and above or would have paid substantially less for the Treadmills.

86.     Defendant breached these express warranties because the Treadmills cannot reach the claimed horsepower even under ideal conditions during household operation.

87.     At the time the Treadmills were sold, Defendant knew that the written affirmation of facts or written promises regarding the level of horsepower were false and misleading.

88.     Defendant has breached its promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff and the Class by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

89.     Plaintiff provided Defendant with appropriate pre-suit notice before the filing of this lawsuit.

90.     Defendant's breach of the promises and warranties entitles Plaintiff and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

## COUNT 2
### Breach of Express Warranty — Magnuson-Moss Warranty Act
### (on behalf of the Nationwide Class)

91.     Plaintiff restates and incorporates all other allegations in this Complaint.

92.     Plaintiff and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

93.     The Treadmills are consumer products as defined in 15 U.S.C. § 2301(1).

94.     Plaintiff and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

95.     Defendant is a suppliers and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

96.     Defendant provided Plaintiff and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

97.     15 U.S.C. § 2310(d) is satisfied because Plaintiff properly invoked the jurisdiction of this Court under CAFA.

98.     This same section—15 U.S.C. § 2310(d)—provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

99.     Defendant made written warranties regarding the Treadmills to Plaintiff and Class members within the meaning of 15 U.S.C. § 2301(6) (hereinafter, "written warranties" or "express warranties").

100.    Defendant breached express warranties made to Plaintiff and the Class members.

101.    Defendant promised, affirmed, and expressly warranted that the Treadmills had 2.25 to 4.0 CHP, and promised that the Treadmills would maintain 2.25 to 4.0 CHP for their lifetimes. In other words, Defendant expressly warranted to Plaintiff and Class members that the Treadmills would meet a level of performance, or power output, associated with a 2.25 to 4.0 CHP horsepower treadmill motor, for life.

102.    The Treadmills are warranted to produce 2.25 to 4.0 CHP for at least the duration of the lifetime warranty during household usage.

103.    Defendant's horsepower warranties became part of the basis of the bargain for Plaintiff and other Class members because they reviewed and considered such statements in deciding to purchase the Treadmills, and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end household treadmill.

104.    Plaintiff reviewed and considered Defendant's representations about the Treadmills' CHP before purchasing the Treadmill. But for Defendant's representations about the Treadmills' horsepower capabilities, Plaintiff would not have purchased the Treadmills or would have paid substantially less for the Treadmills.

105.   Defendant breached its horsepower warranties by delivering Treadmills that do not—and indeed cannot—provide the power and performance of a 2.25 to 4.0 CHP treadmill during household usage.

106.   At the time the Treadmills were sold, Defendant knew that the affirmations of fact or written promises they made regarding horsepower were false and were offered with no intention or capability of honoring them.

107.   As a direct and proximate result of Defendant's breach of its express written warranties regarding the horsepower representations, Plaintiff and the Class members have been damaged in an amount to be proven at trial.

108.   Plaintiff have given Defendant notice and an opportunity to cure these breaches. Plaintiff has also given Defendant notice that that notice was also on behalf of putative class members.

109.   In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

110.   Furthermore, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Defendant's violation of their written warranties.

## COUNT 3
### Breach of Express Warranty (Va. Code Ann. § 8.2-313)
### (on behalf of Virginia Class)

111.   Plaintiff restates and incorporates all other allegations in this Complaint.

112. Plaintiff and the Virginia Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure

113. Defendant represented that the Treadmills had certain CHP specifications on the Treadmills' packaging, on Horizon's website and on Point-of-Sale materials used for sale of the Treadmills, as noted herein, which Plaintiff and the Virginia Class reviewed and considered before purchasing their Treadmills. Defendant warranted that the Treadmills would perform as advertised for the life of the product.

114. As detailed above, these representations are false and/or misleading, and the Treadmills that Plaintiff and the Virginia Class purchased do not conform to the above-noted CHP representations, and cannot operate as promised during actual operation.

115. These representations constitute express warranties as to the Treadmills' qualities, nature and performance.

116. These representations became part of the basis of the bargain for Plaintiff and the Virginia Class members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end Treadmill.

117. Plaintiff and the Virginia Class would not have purchased the Treadmills absent Defendant's representations about the Treadmills producing 2.25 up to 4.0 CHP or would have paid substantially less for the Treadmills.

118. Defendant breached these express warranties because the Treadmills cannot operate at the claimed horsepower for any time material to consumer use.

119.   At the time the Treadmills were sold, Defendant knew that the written affirmation of facts or written promises regarding the level of horsepower over a useful amount of time were false.

120.   Defendant's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff and the Virginia Class, by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

121.   Plaintiff provided Defendant notice before the filing of this lawsuit.

122.   Defendant's breach of the promises and warranties entitle Plaintiff and the Virginia Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

**COUNT 4**
**Breach of Implied Warranty (Va. Code Ann. § 8.2-314)**
**(on behalf of the Virginia Class)**

123.   Plaintiff restates and incorporates all other allegations in this Complaint.

124.   Plaintiff brings this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

125.   The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods and are fit for the purposes underlying the goods sold.

126.   The laws governing the sale of goods also imply a warranty that the goods conform to the promises or affirmations of fact made on the container or label underlying the goods sold.

127.    The purpose of these warranties is to protect consumers and consumers as the intended beneficiaries of those warranties, as the representations made to facilitate Defendant's Treadmill sales by creating consumer demand and consumer purchases.

128.    Plaintiff and Virginia Class members are the intended beneficiaries of the implied warranty contract.

129.    Defendant is a merchant that sells Treadmills.

130.    The Treadmills are consumer goods.

131.    Defendant breached these implied contractual provisions because the Treadmills cannot perform as Defendant promised.

132.    Defendant breached these implied contractual provisions because the Treadmills do not conform to the promises and/or affirmations of fact made on the container or label as Defendant promised and/or affirmed.

133.    Defendant cannot provide a remedy or provide conforming goods because the motors used in the Treadmills inherently cannot provide the represented power in ordinary, sustained operation.

134.    Defendant's breach of the implied warranty of merchantability injured the Plaintiff and the Class by providing Treadmills that could not do the work as warranted and caused Plaintiff and the Class to pay a premium price for the Treadmills.

135.    Defendant's actions breach implied warranties due consumers under Virginia law.

136.    Defendant's breach entitles Plaintiff and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform to the Treadmills' actual performance in the type of use for which they are intended.

## COUNT 5
### Breach of Warranty — Magnuson-Moss Warranty Act

**(on behalf of the Virginia Class)**

137.    Plaintiff restates and incorporates all other allegations in this Complaint.

138.    Plaintiff bring this claim on behalf of the Virginia Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

139.    The Treadmills are consumer products within the meaning of 15 U.S.C. § 2301(1).

140.    Plaintiff and the Virginia Class are consumers within the meaning of 15 U.S.C. § 2301(3) because they are persons entitled under applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

141.    Defendant are and was a supplier of consumer products and a warrantor within the meaning of 15 U.S.C. §§ 2301(4) and (5).

142.    15 U.S.C. § 2310(d) is satisfied because Plaintiff properly invokes the jurisdiction of this Court under CAFA.

143.    This same section—15 U.S.C. § 2310(d)—provides a cause of action to any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

144.    Defendant made implied warranties regarding the Treadmills to Plaintiff and the Virginia Class within the meaning of 15 U.S.C. § 2301(7). Horizon provided Plaintiff and other Virginia Class members an implied warranty of merchantability within the meaning of 15 U.S.C. § 2301(7).

145.    Defendant breached the implied warranty of merchantability because the Treadmills do not—and cannot—perform as promised or affirmed at the 2.6 CHP to 4.0 CHP representations of the Treadmills during household operation. Specifically, the Treadmills do not—and cannot—produce the power expected of a 2.6 CHP to 4.0 CHP during ordinary household use.

27

146.     As a direct and proximate result of Horizon's breach of the warranties regarding the CHP representations, Plaintiff, individually and on behalf of the Virginia Class, has been damaged. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the Virginia Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the Virginia Class in connection with the commencement and prosecution of this action.

147.     Furthermore, Plaintiff and the Virginia Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Horizon's violation of its implied warranties.

## COUNT 6
### Negligent Misrepresentation
### (on behalf of a Virginia Class)

148.     Plaintiff restates and incorporates all other allegations in this Complaint.

149.     Plaintiff and the Virginia Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

150.     In the course of business, Defendant misrepresented that the Treadmills maintain a CHP output that they cannot accomplish while in household use. Defendant had a duty of care to disclose the truthful CHP capabilities rather than the misrepresented information.

151.     Defendant supplied the Plaintiff and Class members false and misleading information that a reasonable consumer would have used as guidance in evaluating the Treadmills' horsepower capabilities.

152.     At the time Defendant made these misrepresentations, Defendant knew or should have known that these CHP representations were false, misleading or made them without

28

knowledge of their truth or falsity. Defendant has failed to exercise reasonable care or competence in communicating the CHP representations.

153.    Defendant negligently misrepresented and/or, at a minimum, negligently omitted material facts concerning the Treadmill power representations, namely its true CHP capabilities while in operating use.

154.    The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase or pay a premium price for the Treadmills.

155.    Plaintiff and Class members maintained an asymmetrical bargaining power which weighed heavily in favor of Defendant, who is a large corporate entity and maintained exclusive control over the actual horsepower capabilities of the Treadmills.

156.    Plaintiff and Class members would not have purchased the Treadmills or would have paid considerably less, if the true facts concerning the CHP claims had been known.

157.    Defendant's deceitful actions have caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result of Defendant's misrepresentations.

## COUNT 7
### Fraud
**(on behalf of the Nationwide Class, or alternatively, on behalf of the Virginia Class)**

158.    Plaintiff restates and incorporates all other allegations in this Complaint.

159.    As alleged herein, Defendant provided false and misleading information concerning the continuous horsepower capability of the Treadmills during household use. These misrepresentations were intended to, and did, induce Plaintiff and Class Members to purchase and/or pay a premium price for their treadmills.

160.    Defendant knew that its CHP representations were false and misleading, or it made such representations without knowledge of their truth or falsity.

161.    Plaintiff and Class Members reasonably and justifiably relied on Defendant's misrepresentations. But for these representations, Plaintiff and Class Members would not have purchased and/or paid a premium price for their treadmills.

## COUNT 8
**Virginia's Consumer Protection Act; Va. Code Ann. §§ 59.1-198, -200**
**(on behalf of the Virginia Class)**

162.    Plaintiff, individually and on behalf of the Virginia Class, restates and incorporates all other allegations in this Complaint.

163.    Plaintiff and members of the Virginia Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

164.    Plaintiff and members of the Virginia Class are consumers within the meaning of the Virginia's Consumer Protection Act; Va. Code Ann. §§ 59.01-198, -200 (the "Virginia Act").

165.    The Virginia Act expressly prohibits "Misrepresenting that goods or services are of a particular quality standard, quality, grade, style or model" and/or "Using any other deception, fraud, false pretense, false promise or misrepresentation in connection with a consumer transaction." Virginia Act, at § 59.1-200(5) and (14):

166.    Defendant engages in "trade" and "commerce" generally and as it pertains to the Treadmills' distribution for sale to consumers within all the states listed herein.

167.    Defendant places continuous horsepower ratings on the Treadmills' boxes and in point of sale materials supplied to retailers.

168.    The continuous horsepower promises and representations are misleading and deceptive for the reasons discussed herein.

169.    Defendant's representations regarding the Treadmills "continuous" horsepower are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

170.    Defendant understood and intended that the representations about the Treadmills' horsepower would influence consumer behavior.

171.    Defendant understand it has an obligation to ensure the honesty of all promotions and avoid misleading the public regarding its products.

172.    Defendant's misleading horsepower statements in point-of-sale materials, on boxes and on its website constitute unfair methods of competition and unfair and/or deceptive acts or practices in the conduct of trade or commerce for treadmill sales to consumers.

173.    Defendant's acts and practices offend public policy as established by statute.

174.    Defendant's acts and practices are immoral, unethical, oppressive and unscrupulous.

175.    Defendant's conduct substantially injured actual and potential consumers, the public and competition in each of the states in which the Treadmills were sold.  As Defendant knows, Plaintiff, Virginia Class members, and consumers would not pay the prices they paid absent Defendant's false and misleading horsepower representations.

176.    Defendant's conduct materially affected available information regarding its products to consumers nationwide and in each state in which the Treadmills were sold.

Defendant's conduct thus improperly distorted the information available to the public regarding the Treadmills.

177.    Defendant's actions caused consumers to overpay for the Treadmills. These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from Defendant's misconduct.

178.    Defendant's actions involved information material to Treadmill purchases. The misleading nature of the promise or affirmations on the box, at the point of sale, online, and other similar representations, and the failure to include necessary explanatory information regarding such representations, were material to the price at which consumers purchased the Treadmills.

179.    Because the representations about Treadmill CHP involve technical information that an ordinary consumer could not readily test, consumers could not have reasonably avoided the losses caused by misrepresentations forming the basis for the Treadmills' prices.

180.    Plaintiff and the Virginia Class purchased the Treadmills for personal, family or household use.  Thus, the practices discussed above constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the Virginia Act.

181.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff and the Virginia Class to suffer ascertainable losses when they paid a premium for the Treadmills above and beyond what they should have paid and provided Defendant more in revenues for the Treadmills than it could have received absent its false and misleading representations.

182.    Plaintiff and the Virginia Class are entitled to recover damages and other appropriate relief.

## PRAYER FOR RELIEF

32

WHEREFORE, Plaintiff, on behalf of themselves and all others similarly situated, respectfully request that this Court:

1. Certify the proposed Class and Subclasses and appoint Plaintiff and their legal counsel to represent the Class and Subclasses;

2. Find in favor of Plaintiff, the Class, and the Subclasses on all counts asserted herein;

3. Declare that Defendant's conduct violated the statutes referenced herein;

4. Award Damages, including compensatory, exemplary, and statutory to Plaintiff, the Class, and the Subclasses in an amount to be determined at trial;

5. Grant restitution to Plaintiff, the Class, and the Subclasses and require Defendant to disgorge its ill-gotten gains;

6. Award Plaintiff, the Class, and the Subclasses punitive damages in an amount to be determined at trial;

7. Award Plaintiff, the Class, and the Subclasses reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

8. Enjoin Defendant from future misrepresentations regarding the horsepower of its Treadmills;

9. Award Plaintiff, the Class, and the Subclasses pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

10. Order any such other and further relief the Court deems just and equitable.


Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all counts herein and of all issues so triable.

Respectfully submitted,

June 9, 2022                    /s/ _Mark B. Holland_____

**HAYMORE & HOLLAND, P.C.**
Mark B. Holland
VSB #:32940
219 Patton Street
Danville, VA 24541
Telephone: (434) 793-8378
Facsimile:  (434) 793-8886
mark@haymoreholland law.com

**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
Nick Suciu III*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
*nsuciu@milberg.com*


**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger*
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
*gklinger@milberg.com*


**MARKOVITS, STOCK & DeMARCO, LLC**
W.B. Markovits*
Terence R. Coates*
Justin C. Walker*
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile:  (513) 665-0219
*bmarkovits@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

*\*pro hac vice forthcoming*

*Counsel for Plaintiff, the Class, and the Subclasses*