IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

Case No.: 5:22-cv-00035-EKD

---

WENDY PRINCE, individually, and on
behalf of all others similarly situated,

Plaintiff,

v.

JOHNSON  HEALTH  TECH  TRADING,
INC., JOHNSON HEALTH TECH RETAIL,
INC., JOHNSON HEALTH TECH, INC.,

Defendants.

---

### FIRST AMENDED CLASS ACTION COMPLAINT

The allegations made in this First Amended Class Action Complaint ("Complaint") are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

### INTRODUCTION

1.       Plaintiff Wendy Prince ("Plaintiff") brings this proposed class action on behalf of herself and similarly situated purchasers (the "Class Members") of Defendants Johnson Health Tech Trading, Inc., Johnson Health Tech Retail, Inc., and/or Johnson Health Tech, Inc. (collectively, "Johnson Health" or "Horizon") treadmills purchased through their brand, Horizon Fitness. Plaintiff challenges the conduct of Horizon in the false advertising, misleading marketing,

1

and sales of its personal fitness treadmills (the "Treadmills"),[1] which are manufactured, developed, marketed and sold for household use under the Horizon brand name. The Treadmills are incapable of reaching and maintaining Horizon's overstated and inflated continuous horsepower representations during normal designed household exercise use. Plaintiff seeks damages and equitable relief on behalf of herself and all others similarly situated.

2.     Treadmill motor horsepower rating is one of the most prevalent and recognized specifications a consumer compares when purchasing a treadmill. Horizon marketed that the horsepower delivered by the motor can directly affect the quality of the Treadmills' performance and thus a reasonable consumer's purchasing decision. Horizon deceitfully touted excessive continuous horsepower capabilities with false and misleadingly inflated continuous horsepower ratings intended to induce consumers into purchasing the Treadmills and paying an inflated premium price based on the horsepower misrepresentations.

3.     Horizon misled consumers into believing that the Treadmills actually generate and maintain the represented continuous horsepower, even though the horsepower misrepresentations can never be obtained during actual household use by the Plaintiff and consumer Class and Subclass Members. Horizon manufactures, develops, markets, distributes, and sells a variety of treadmill models throughout the country, including the Treadmills that Plaintiff, Class and Subclass Members have purchased. Based on the horsepower misrepresentations, Horizon charged a premium price for the Treadmills' misrepresented horsepower capabilities, capabilities which are not actually available during household usage.

---

[1]     Defendant manufactured, advertised, marketed and sold multiple treadmill models during the relevant time period with similar horsepower misrepresentations, including but not limited to, Horizon 7.0 AT (3.0 CHP), Horizon 7.4 AT (3.5 CHP), Horizon 7.8 AT (4.0 CHP), Horizon T101 (2.5 CHP), Horizon T202 (2.75 CHP), and Horizon T303 (3.0 CHP).

4.      At the time of Plaintiff's purchase, Horizon made numerous representations on its website (https://www.horizonfitness.com/treadmill), in marketing materials, and through third-party retailers, including online retailers such as Amazon.com and Dick's Sporting Goods ("Dick's"), namely that its Treadmills had a specific power output, quantified in continuous horsepower ("CHP"). The Treadmills could not produce, let alone maintain continuously, their marketed and advertised continuous horsepower during household usage.

5.      Horizon maintains an authorized sales and distribution partnership with Amazon.com, as well as maintaining an Amazon "Horizon Fitness Store." Through Amazon.com, the world's largest e-commerce marketplace, Horizon marketed the same horsepower capability misrepresentations as it made on its own website, and in marketing and advertising.

6.      In addition to online sales through Amazon.com and directly through https://www.horizonfitness.com, Horizon sells its exercise equipment products at Dick's, the nation's largest sporting goods retailer. Horizon treadmills are sold at most of Dick's approximately 720 retail sporting goods store locations, in 47 states throughout the country.

7.      Amazon.com, Dick's, and other third-party retailers act as authorized agents of Horizon in the marketing, sale and distribution of Treadmills.

8.      During the relevant time period Horizon consistently and prevalently advertised and marketed that the Treadmills operated at a continuous horsepower of between 2.5 CHP and 4.0 CHP, depending on the specific treadmill model. On information and belief, *all* Horizon treadmills operate in household use well below Horizon's continuous horsepower representations and maintain similar continuous horsepower regardless of the misrepresented CHP.

9.      Horizon labeled the Treadmills with false and misleading horsepower ratings because such representations are highly material to consumers and serve to differentiate the

3

Treadmills from the competition and justify a higher price. Reasonable consumers expect their Treadmills to generate and maintain the horsepower Horizon claims, but instead Plaintiff, Class and Subclass Members' Treadmills only provide a small fraction of the horsepower promised by Horizon while exercising.

10.     Horizon's CHP representations are inaccurate, misleading, and materially overstate the Treadmills' true operating horsepower. It is not possible for the Treadmills to operate at a continuous horsepower of 4.0 CHP, or even 2.5 CHP, when drawing electrical power from the standard 120-volt, 15-amp outlet found in residential homes in the United States for which the Treadmills are designed.

11.     Horizon recognizes that consumers view a treadmill's power as one of the most important features in making a treadmill purchase for their home. Horizon specifically highlighted its claims concerning the Treadmills' horsepower in advertising, on its website, in its press releases, and at its point-of-sale marketing materials prominently displayed at Dick's stores and other third-party retailers and online by third-party retailers such as Amazon.

12.     Horizon's false and overstated horsepower representations are designed to mislead consumers into believing the Treadmills have much more power than they actually deliver, leading consumers to overpay for the Treadmills and/or causing consumers to purchase the Treadmills instead of competitor manufacturers' treadmills or less expensive models.

13.     Reasonable consumers like Plaintiff expect the Treadmills to produce the represented horsepower stated in and on Horizon's marketing materials and/or website during household operation and would not have purchased the Treadmills or would have paid less had they known that Horizon's representations regarding the Treadmills' CHP were false and misleading.

4

14.     Horizon's Treadmills are worth substantially less than what Plaintiff, Class and Subclass Members paid to purchase them.

15.     After Horizon was notified by Plaintiff's counsel in this case of its false and misleading marketing, it immediately deleted from its website all references to the deceptive claims in an obvious attempt to skirt liability.

16.     Plaintiff suffered damages resulting from Horizon's actions and omissions. Accordingly, Plaintiff brings this class action asserting claims against Horizon for violation of consumer protection and false advertising statutes, breach of express and implied warranties, and constructive fraud.

## JURISDICTION

17.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because Johnson Health Tech Trading, Inc. is incorporated as a Wisconsin corporation, has its headquarters there, and is therefore a citizen of the State of Wisconsin; Plaintiff, Wendy Prince is a citizen of the State of Virginia, and purchased a Horizon Treadmill on the Horizon website while located in the State of Virginia; there are more than 100 class members in many different states throughout the country; and the aggregate amount in controversy exceeds $5 million.

18.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

19.     Plaintiff purchased a Horizon 7.8AT Treadmill online directly from Horizon's website, www.Horizon.com, on or about November 9, 2020, for the purpose of using the Treadmill for personal exercise in her home located in Shenandoah, Virginia. After purchasing her Treadmill,

Plaintiff used her Treadmill for its ordinary intended use within her home and has not received the CHP that Horizon represented. Horizon's website expressly noted that the 7.8 AT Treadmill delivered 4.0 CHP.

20.     Before purchasing her Treadmill from Horizon, Plaintiff reviewed Horizon's website and Horizon's statements that the Horizon 7.8AT Treadmill was capable of producing 4.0 CHP when she was comparing the 7.8AT treadmill to other treadmill manufacturers. Horizon's representations and marketing stating that the 7.8AT series treadmill provides 4.0 CHP was a material factor considered in Plaintiff's purchase of her Treadmill. Plaintiff would not have purchased her Treadmill or would have paid considerably less if she had known its true horsepower capabilities. Plaintiff believed that power was a material factor in the quality and operation of treadmill she wished to purchase, that the CHP represented on Horizon's website indicated the power of the treadmill she would receive, and she would not have purchased her Treadmill or would have paid less but for the CHP misrepresentations on Horizon's website.

21.     Plaintiff paid $1,999.00 for her Horizon 7.8AT Treadmill on or about November 9, 2020 and has been damaged because she paid a price premium resulting from Horizon's inflated CHP representations.

22.     Defendant Johnson Health Tech Trading, Inc. is a Wisconsin corporation, headquartered in Cottage Grove, Wisconsin. "Johnson Health Tech is the world's largest specialty fitness retailer, operating more than 460 locations in Asia, Europe and the Americas."[2] Johnson Health Tech Trading develops, markets and sells fitness equipment for residential use, including treadmills, elliptical, rowers, and bikes. Johnson Health Tech Trading is in the business of developing, marketing and selling exercise equipment throughout North America in interstate

---

[2]     https://www.johnsonhealthtech.com/us/eng/global-by-design/retail-distribution (last accessed June 28, 2022).

commerce and continues to expand its presence in the US and internationally, including through sale of Horizon Treadmills.[3] In 2008, Johnson Health merged with Horizon Fitness, Inc. and continued selling and marketing Treadmills under the Horizon brand.

23.     Defendant Johnson Health Tech Retail Inc. is a Wisconsin corporation, headquartered in Cottage Grove, Wisconsin. "Johnson Health Tech Retail, Inc., is the largest specialty fitness retailer in North America."[4] Johnson Health Tech Retail, Inc. develops, markets and sells fitness equipment for residential use, including treadmills, elliptical, rowers, and bikes. Johnson Health Tech Retail is in the business of developing, marketing and selling exercise equipment throughout North America in interstate commerce and continues to expand its presence in the US and internationally, including through sale of Horizon Treadmills.

24.     Defendant Johnson Health Tech, Inc.'s global product development, marketing and engineering headquarters are based in Grove, Wisconsin. Johnson Health Tech Inc. is the parent company for Johnson Health Tech Retail, Inc. and Johnson Health Tech Trading Inc.  Johnson Health Tech, Inc. "is among the world's largest and fastest-growing fitness equipment manufacturers and is home to some of the most respected brands in the fitness industry, including: Matrix, Vision and Horizon."[5]

---

[3]     Johnson Health has a wide range of health fitness brands in addition to Horizon, including entities doing business as Matrix, Vision Fitness, Synca Welness, Fujiiryoki, and Tempo Fitness.

[4]     https://www.prnewswire.com/news-releases/johnson-fitness-and-wellness-retail-brand-launched-in-the-us-market-300518960.html (last visited on July 1, 2022).

[5]     *Id*.

## STATEMENT OF FACTS

### I.   <u>Horsepower Overview</u>

25.    Horsepower is a unit of measurement of power or the rate at which mechanical energy is expended and is often used to quantify the mechanical power output of a motor or an engine.

26.    The "horsepower" measurement of power was adopted in the late 18th century by Scottish engineer James Watt to compare the output of steam engines with the power of draft horses. In describing electric power under the metric system, the term "watt" is now commonly used instead of horsepower as a measure of mechanical power output performed by a motor. One unit of horsepower equals approximately 746 watts.

27.    The amount of mechanical power output generated by any given electric motor can be determined by examining that electrical voltage available to it and the amperage that the motor is capable of drawing. To calculate an electric motor's operating horsepower, voltage is multiplied by amperage and then by a fraction representing the efficiency of the motor. That total is then divided by 746 watts to convert the watts to horsepower.

28.    A simple equation thus describes how to calculate horsepower by multiplying the available voltage, amperage draw, and motor efficiency, and dividing that product by 746 (to convert into horsepower as measured by wattage):

$$\frac{\textbf{(Voltage)} \text{ x } \textbf{(Amperage)} \text{ x } \textbf{(Motor Efficiency)}}{\textbf{746}} = \textbf{HP}$$

29.    Most electrical outlets in American homes are equipped with the standard 15-amps, with two slots and a U-shaped grounding third hole and have an accompanying 120-volt circuit. A 15-amp circuit is usually served by 14-gauge wire and is protected by a 15-amp circuit breaker or fuse based on building and electrical codes.

30.     Horizon's Treadmills are rated at 15 amps with a 110-volt circuit, which equates to a theoretical maximum mechanical power output of 1,650 watts or 2.21 horsepower output without taking into consideration the motor's actual efficiency[6] and power factor losses, which further decrease the motor's horsepower output. Heat and other factors decrease the motor's efficiency, and therefore further decrease the power output of the motor while in actual use.

31.     After factoring the effects of the power factor and efficiency losses, Horizon's Treadmills are capable of providing only a fraction of the advertised CHP that Horizon markets its Treadmills as capable of providing while in household use.

32.     It is beyond the safety rating for an electrical device to draw more power than the receptacle and household electrical circuit it is designed for. If an electrical device does draw more power than the household electrical circuit it is designed for, the circuit-breaker will flip and cut off power to that circuit. As such, Horizon's treadmills are incapable of drawing more power than a household outlet is capable of providing during actual household use.

33.     In addition to the power input limits available during household use, the Treadmills themselves are equipped with an electronic control board that regulates the amperage draw and further limits the horsepower capabilities to well below Horizon's continuous horsepower representations for the Treadmills.

34.     Horizon's Treadmills are only capable of producing a fraction of the misrepresented CHP due to the Treadmill's onboard electrical circuit breaker, as well as common household electrical limits found in households throughout the United States.

35.     In order to be true, Horizon's horsepower representations would have to defy the laws of physics and allow Horizon's Treadmills to produce more CHP than the Treadmills are

---

[6]     Electric motor efficiency is the measure of the ability of an electric motor to convert electrical energy to mechanical energy.

actually capable of producing from a common household outlet power source in the United States and for which the Treadmills are rated and marketed. Based on Horizon's misleading horsepower representations, Horizon's Treadmills purportedly produce more CHP than possible from the actual energy input from a household outlet receptacle.

## II.   <u>Continuous Horsepower</u>

36.    Horizon marketed and sold the Treadmills as maintaining a certain "continuous horsepower," or "continuous duty horsepower." CHP can be defined as a measurement of the motor's ability to maintain and continuously produce power over an extended period of time without exceeding the current rating of the motor.

37.    CHP is often considered to be the most accurate indicator of a motor's power output because, as Horizon states, a "continuous duty motor measures the minimum horsepower delivered at all points during a workout, and is a commercial grade standard applied to treadmills used in health clubs and higher-quality home treadmills."[7]

38.    Horizon's authorized third-party sales partner, Dick's Sporting Goods, represented that "*CHP measures how much power the motor maintains throughout the workout.*"[8]

39.    Treadmill reviewers define CHP the same as Horizon and Dick's. It is "*how much power is maintained throughout the workout.*"[9]

---

[7]        https://dev-www.johnsonfitness.com/blog/2013/07/16/treadmill_drive_motors_and_the_question_of_horsepower/ (last accessed July 1, 2022).
[8]        https://protips.dickssportinggoods.com/sports-and-activities/exercise-and-fitness/how-to-choose-the-right-treadmill (emphasis added) (last accessed July 1, 2022).
[9]        https://www.treadmillreviews.net/treadmill-motors-what-you-need-to-know/ (emphasis added) (last accessed July 1, 2022).

40.     Or similarly, the CHP associated with a treadmill is the "*measure of sustained power during regular use*. The continuous motor power is what is consistently delivered during heavy usage over an extended period of time."[10]

41.     When assessing the CHP of a treadmill, "the measurement is taken over an extended period of time. *It shows that the motor can maintain the power it is rated for without lagging or slowing down under strain.*"[11]

42.     The advertised CHP capabilities associated with Horizon's Treadmills are deliberate misrepresentations because the Treadmill motor is incapable of maintaining the stated CHP rating at any time during the consumer's workout. In fact, Horizon's Treadmills are not capable of achieving the advertised CHP at *any* time during a consumer's workout.

43.     Horizon bases its false and misleading horsepower representations on an inflated laboratory testing power draw (amperage) not possible in household use. The laboratory testing power input far exceeds the current rating of the Treadmill motors while in household use, and thus cannot be truthfully represented, by definition, as the Treadmills' CHP capabilities to Plaintiff and the Class Members.

44.     Horizon's advertised CHP is a misleading power metric for a consumer to evaluate unless the motor is actually capable of attaining the CHP in actual use and under standard operating conditions. A reasonable consumer is led to believe that the CHP representations are actually achievable while in normal exercise use based on Horizon's horsepower misrepresentations. Reasonable consumers cannot properly evaluate the Treadmills' power metrics due to Horizon's misleading and false statements regarding the Treadmills' inflated CHP.

---

[10]     https://treadmill-ratings-reviews.com/treadmill-articles/facts-about-treadmill-motors/ (emphasis added) (last accessed July 1, 2022).

[11]     https://www.treadmillreviews.com/treadmill-buying-guide/ (emphasis added) (last accessed July 1, 2022).

## III.   **Horizon's CHP Misrepresentations and Misleading Statements**

45.     Horizon promotes the Treadmills online and in numerous market outlets including its own treadmill blog. Horizon makes clear that "The treadmill horsepower rating is probably the single most recognizable spec that jumps out at a consumer when her or she begins to do their buying research."[12]

46.     Horizon's blog stated that, "Unless the treadmill has a strong motor, you will easily wear it out."[13]

47.     Horizon further states that horsepower "ratings and numbers can be very confusing and ultimately incredibly misleading."[14]

48.     Horizon listed the misrepresented 4.0 CHP Rapid Sync Motor for the 7.8 AT treadmill prominently on its website.[15]

49.     Focusing directly on the power capabilities of its 7.8 AT Treadmill, Horizon implored its customers to "Power your workouts with a 4.0 Continuous-Duty Horsepower motor and 500 lb thrust incline motor… Together, they create the most responsive drive system available on a treadmill"[16]

50.     Horizon described the 7.8AT Treadmill as "the ultimate runner's treadmill with our most powerful motor."[17]

---

[12]      https://web.archive.org/web/20201127170601/https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (last accessed June 1, 2022).
[13]      https://web.archive.org/web/20200921071722/https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (emphasis added) (last accessed May 25, 2022).
[14]      *Id.*
[15]      https://web.archive.org/web/20200614212354/https://www.horizonfitness.com/horizon-7-8-at-treadmill (last accessed May 25, 2022).
[16]      *Id.*
[17]      https://web.archive.org/web/20200614212354/https://www.horizonfitness.com/horizon-7-8-at-treadmill (last accessed June 1, 2022).

51.     Horizon further stated that "Powerful, 4.0 CHP motor has 33% faster speed and incline changes, perfect for interval training."[18] Horizon's representations clearly state that the CHP is delivered to the consumer during continuous use.

52.     Horizon's Blog also explains that the "When shopping for a treadmill, look for a Continuous Duty Rating (CHP). A continuous duty motor measures the minimum horsepower delivered at all points during a workout and is a commercial grade standard applied to treadmills used in health clubs and higher-quality home treadmills…Continuous duty motors are the highest quality available…They are more powerful, they last longer, and they deliver smooth performance."[19] Again, Horizon clearly represented that the CHP is the treadmill power achieved in continuous use during a runner's workout.

53.     In addition to Horizon's online advertising and marketing horsepower misrepresentations, Horizon's in-store floor model displays across the country at Dick's Sporting Goods prominently exhibit Horizon's misrepresented CHP as a major selling feature

54.     In direct correlation to the misrepresented horsepower and the various treadmill models that Horizon offers, Horizon has priced the models according to the misleading CHP associated with each model, incrementally increasing the price premium based on successively higher CHP representations.

55.     Horizon's advertised CHP rating is fictitious when compared to the actual horsepower available in normal household operation. In order to achieve the misleading CHP output that Horizon claims the Treadmills are capable of achieving, the power input necessary

---

[18]     https://web.archive.org/web/20200414041842/https://www.horizonfitness.com/horizon-7-8-at-treadmill (last accessed May 25, 2022).
[19]     https://web.archive.org/web/20200921071722/https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (last accessed June 1, 2022).

when plugged into a consumer's household outlet would far exceed the actual capability of the electrical infrastructure found in American homes.

56.     The CHP misrepresentations made by Horizon are more than mere subjective promotional statements that could be considered advertising puffery. Horizon's CHP misrepresentations are an objectionably measurable and quantifiable metric that a reasonable consumer is drawn to believe is real and achievable when using the Treadmills for ordinary exercise use.

57.     Dick's Sporting Goods, a leading retailer of residential treadmills including certain Horizon Treadmills, produces consumer tips for making sporting goods purchases. Notably, Dick's Pro Tips provides guidance for purchasing treadmills with one such publication titled, "Top Five Things That Influence the Price of Treadmills."[20] The first Tip for purchasing treadmills is titled "Get On Your Horse(Power)" and states "The CHP is the measure of how much power the motor maintains throughout the workout, and the higher it is, the more expensive the treadmill will likely be."[21] In other words, a leading third-party retailer of residential treadmills including Horizon Treadmills acknowledges that CHP representations are directly linked to treadmill sale price and that the higher the CHP representation, the higher the price of the treadmill.

58.     At some point after Plaintiff purchased her Treadmill from Horizon's website, Horizon provided a surreptitiously hidden disclaimer on its website in a perfunctory attempt to clarify the continuous horsepower representations it has so prevalently misrepresented throughout the Class Period to Plaintiff, Class and Subclass Members.[22] The purported disclaimer states: "*The stated motor Horsepower (HP) is based on measurement in a laboratory setting. It is an

---

[20]      https://protips.dickssportinggoods.com/sports-and-activities/exercise-and-fitness/top-five-things-influence-price-treadmills (last visited on July 1, 2022).

[21]      *Id*.

[22]      https://www.horizonfitness.com/horizon-7-8-at-treadmill (last accessed May 25, 2022).

indication of the robustness of the motor and does not reflect the operational HP in home use, which is typically limited by home electrical systems." This disclaimer was only provided after Horizon was notified by Plaintiff's counsel that it was deceiving consumers about its horsepower representations.

59.     Horizon's newly revealed disclaimer, buried in fine print on its website at the very bottom of its individual treadmill performance spec page, is inadequate, and fails to sufficiently notify a reasonable consumer as to the true operating horsepower capabilities of Horizon's Treadmills. Furthermore, the disclaimer fails to differentiate between stated horsepower and continuous duty horsepower.

## CLASS ACTION ALLEGATIONS

60.     It is believed that there are thousands of Class Members across the United States who have purchased Horizon's Treadmills.

61.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this lawsuit on behalf of themselves and a nationwide class (the "Nationwide Class" or "Class") defined as follows:

> All persons in the United States who purchased a Horizon treadmill, during the maximum period of time permitted by law, for personal, family, or household purposes, and not for resale.

62.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this lawsuit on behalf of herself and a Virginia-statewide class (the "Virginia Class" or "Subclass") defined as follows:

> All persons in the State of Virginia who purchased a Horizon treadmill, during the maximum period of time permitted by law, for personal, family, or household purposes, and not for resale.

63.     Plaintiff specifically excludes Horizon's current and former officers and directors, members of the immediate families of Horizon's officers and directors, Horizon's employees, Horizon's legal representatives, heirs, successors, and assigns, any entity in which Horizon has or

had a controlling interest during the Class Period, defense counsel and members of his/her immediate family, and the judicial officers to whom this lawsuit is assigned.

64.     The definitions of the Class and Subclass are unambiguous, and Plaintiff is a member of the Class and Subclass she individually seeks to represent.

65.     Plaintiff reserves the right to amend or modify the Class and Subclass definitions and exclusions to create greater specificity, further division into subclasses, or limitation to particular issues as this case progresses.

66.     The Nationwide Class is so numerous and geographically dispersed that joining all Class members would be impracticable. The exact number of Class members is unknown by Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes that the Class numbers at least in the thousands.

67.     The Virginia Subclass is so numerous and geographically dispersed in Virginia that joining all the member would be impracticable. The exact number of members in the Subclass is unknown by Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes that the Subclass consists of at least 100 potential class members.

68.     Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Horizon treadmill that was sold with a misleading CHP rating and suffered a pecuniary loss as a result of the purchase. Plaintiff's claims have the same essential characteristics as all other Class members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Classes. All claims are based on Horizon's course of conduct and similar legal theories. All Class members, including Plaintiff, suffered the same type of injury and possess the same interests in pursuing this case as does Plaintiff, and none benefitted

from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

69.     Plaintiff's claims are typical of the claims of the Subclass because Plaintiff purchased a Horizon treadmill sold with a misleading horsepower rating and suffered a pecuniary loss as a result of the purchase. The Subclass claims have the same essential characteristics as all other Subclass members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Subclass. The Subclass claim is based on the course of conduct and similar legal theories. All Subclass members, including Plaintiff, suffered the same type of injury and possess the same interests in pursuing this case as do Plaintiff, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

70.     Plaintiff will fairly and adequately protect the interests of the members of the Class and the Subclass and has retained counsel competent and experienced in class action litigation.

71.     Horizon acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole and the Subclass as a whole.

72.     Common questions of law and fact exist as to Class members' claims and Subclass members' claims and predominate over questions affecting only individual Class or Subclass members. Common legal and factual questions include, but are not limited to:

      a.     The nature of Horizon's promotion of CHP;

      b.     Whether Horizon misrepresented the CHP, and/or horsepower of the Treadmills;

c.      Whether the Horizon's "continuous horsepower" claims were false and/or misleading;

d.      Whether Horizon knew or should have known its claims regarding the Treadmills' horsepower were false and/or misleading;

e.      Whether Horizon's representations were material to consumers and the market;

f.      Whether the Treadmills produce the represented "continuous horsepower" for any time material to consumer operation and use;

g.      Whether Horizon placed "continuous horsepower" ratings on the Treadmills' packaging and store displays;

h.      Whether Horizon provided point of sale materials to retailers for use in promoting Horizon's Treadmills and whether those materials included misleading references to CHP;

i.      Whether Horizon provided advertising copy or suggested promotional language to retailers for use in promoting Horizon's Treadmills and whether those materials included misleading references to CHP;

j.      Whether Horizon's CHP statements constituted contractual promises or warranties on the Treadmills;

k.      Whether Horizon's misleading representations caused it to receive money that it would not have received absent those representations;

l.      Whether Horizon's actions breached the duties it owed Plaintiff, the Class and Subclass under express warranties for the Treadmills;

m.      Whether Horizon's actions breached the duties it owed Plaintiff, the Class and Subclass under its implied warranties regarding the Treadmills;

n.    Whether Plaintiff, the Class and Subclass paid more for the Treadmills than they would have paid absent Horizon's misleading horsepower representations; and

o.    Whether Class and Subclass members are entitled to damages, restitution, and/or monetary relief and if so, the amount and nature of such relief.

73.    Resolution of each of these issues will turn upon evidence common to all Class and Subclass members.

74.    Resolution of issues common to all Class and Subclass members will predominate over individual issues.

75.    The issues common to the Class and the Subclass and the nature of the common relief creates a cohesive class for injunctive relief.

76.    Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

a.    It would avoid a multiplicity of suits and consequential burden on the courts and Horizon;

b.    It would be virtually impossible for all members of the Class and/or Subclass to intervene as Plaintiff in this action;

c.    It would assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

d.    It would provide court oversight of the claims process, once Horizon's liability is adjudicated;

e.     It would permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and

f.     It would permit the adjudication of relatively small claims by certain Class and Subclass members, who could not afford to individually litigate such claims against a large corporate entity such as Horizon.

77.     Plaintiff and the proposed Class and Subclass satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

78.     Plaintiff is not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

## PRE-LAWSUIT NOTICE

79.     In a notice letter dated April 7, 2022, Plaintiff provided Horizon with proper pre-suit notice on behalf of Plaintiff and similarly situated putative Class and Subclass members before filing this lawsuit in an attempt to address Horizon's horsepower misrepresentations without court intervention and allow Horizon the opportunity to cure. Horizon acknowledged receipt of Plaintiff's notice letter in a May 5, 2022 letter from Horizon's legal counsel.

80.     Plaintiff's April 7, 2022 notice letter was sent within a reasonable time after she discovered or reasonably should have discovered that her Horizon treadmill did not produce the represented 4.0 CHP.

81.     In response to the April 7, 2022 pre-suit notice letter, Horizon indicated through its legal counsel that it fully stands behind its treadmill specifications and provided no indication that

it was willing to cure the treadmill horsepower misrepresentations with respect to Plaintiff or others.

## COUNT 1
### Breach of Express Warranty
### (on behalf of Nationwide Class)

82.     Plaintiff restates and incorporates all other allegations in this Complaint.

83.     Plaintiff and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

84.     Horizon represented on the Treadmills' packaging, on Horizon's website and on the websites of other third-party retailers that the Treadmills had certain horsepower specifications, as noted herein, which Plaintiff and other consumers reviewed and relied on as truths asserted before purchasing their Treadmills.

85.     As detailed above, these representations were false and/or misleading, and the Treadmills Plaintiff and the Class members purchased do not conform to the above noted horsepower representations and cannot operate as promised during household usage.

86.     These representations constituted express warranties as to the Treadmills' qualities, nature and performance.

87.     These representations became part of the basis of the bargain for Plaintiff and the Class members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of the Treadmills.

88.     Plaintiff and the Class would not have purchased the Treadmills absent Horizon's representations that the Treadmills would operate at 2.25 CHP and above or would have paid substantially less for the Treadmills.

89.     Horizon breached these express warranties because the Treadmills cannot reach the claimed horsepower even under ideal conditions during household operation.

90.     At the time the Treadmills were sold, Horizon knew that the written affirmation of facts or written promises regarding the level of horsepower were false and misleading.

91.     Horizon's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff and the Class by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

92.     Plaintiff provided Horizon with appropriate pre-suit notice before the filing of this lawsuit.

93.     Horizon's breach of the promises and warranties entitles Plaintiff and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

## COUNT 2
### Breach of Express Warranty — Magnuson-Moss Warranty Act
### (on behalf of the Nationwide Class, or alternatively on behalf of the Virginia Sublass)

94.     Plaintiff restates and incorporates all other allegations in this Complaint.

95.     Plaintiff, the Class and Subclass bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

96.     The Treadmills are consumer products as defined in 15 U.S.C. § 2301(1).

97.     Plaintiff, the Class and Subclass are consumers as defined in 15 U.S.C. § 2301(3).

98.     Horizon is a suppliers and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

99.     Horizon provided Plaintiff, Class and Subclass members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

100.    15 U.S.C. § 2310(d) is satisfied because Plaintiff properly invoked the jurisdiction of this Court under CAFA.

101.    This same section—15 U.S.C. § 2310(d)—provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

102.    Horizon made written warranties regarding the Treadmills to Plaintiff, the Class and Subclass within the meaning of 15 U.S.C. § 2301(6) (hereinafter, "written warranties" or "express warranties").

103.    Horizon breached express warranties made to Plaintiff, the Class and Subclass.

104.    Horizon promised, affirmed, and expressly warranted that the Treadmills had 2.25 to 4.0 CHP, and promised that the Treadmills would maintain 2.25 to 4.0 CHP for their lifetimes. In other words, Horizon expressly warranted to Plaintiff, the Class and Subclass that the Treadmills would meet a level of performance, or power output, associated with a 2.25 to 4.0 CHP horsepower treadmill motor, for life.

105.    The Treadmills are warranted to produce 2.25 to 4.0 CHP for at least the duration of the lifetime warranty during household usage.

106.    Horizon's horsepower warranties became part of the basis of the bargain for Plaintiff, the Class and Subclass because they reviewed and considered such statements in deciding to purchase the Treadmills, and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end household treadmill.

107.    Plaintiff reviewed and considered Horizon's representations about the Treadmills' CHP before purchasing the Treadmill. But for Horizon's representations about the Treadmills'

horsepower capabilities, Plaintiff would not have purchased the Treadmills or would have paid substantially less for the Treadmills.

108.    Horizon breached its horsepower warranties by delivering Treadmills that do not—and indeed cannot—provide the power and performance of a 2.25 to 4.0 CHP treadmill during household usage.

109.    At the time the Treadmills were sold, Horizon knew that the affirmations of fact or written promises they made regarding horsepower were false and were offered with no intention or capability of honoring them.

110.    As a direct and proximate result of Horizon's breach of its express written warranties regarding the horsepower representations, Plaintiff, the Class and Subclass members have been damaged in an amount to be proven at trial.

111.    Plaintiff have given Horizon notice and an opportunity to cure these breaches. Plaintiff has also given Horizon notice that that notice was also on behalf of putative class members.

112.    In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class and Subclass members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class and Subclass members in connection with the commencement and prosecution of this action.

113.    Furthermore, Plaintiff, the Class and Subclass are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Horizon's violation of their written warranties.

## COUNT 3
### Breach of Express Warranty (Va. Code Ann. § 8.2-313)
### (on behalf of Virginia Class)

114.    Plaintiff restates and incorporates all other allegations in this Complaint.

115.    Plaintiff and the Virginia Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure

116.    Horizon represented that the Treadmills had certain CHP specifications on the Treadmills' packaging, on Horizon's website and on Point-of-Sale materials used for sale of the Treadmills, as noted herein, which Plaintiff and the Virginia Class reviewed and considered before purchasing their Treadmills. Horizon warranted that the Treadmills would perform as advertised for the life of the product.

117.    As detailed above, these representations were false and/or misleading, and the Treadmills that Plaintiff and the Virginia Class purchased do not conform to the above-noted CHP representations and cannot operate as promised during actual operation.

118.    These representations constitute express warranties as to the Treadmills' qualities, nature and performance.

119.    These representations became part of the basis of the bargain for Plaintiff and the Virginia Class members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end Treadmill.

120.    Plaintiff and the Virginia Class would not have purchased the Treadmills absent Horizon's representations about the Treadmills producing 2.25 up to 4.0 CHP or would have paid substantially less for the Treadmills.

121.    Horizon breached these express warranties because the Treadmills cannot operate at the claimed horsepower for any time material to consumer use.

122.    At the time the Treadmills were sold, Horizon knew that the written affirmation of facts or written promises regarding the level of horsepower over a useful amount of time were false.

123.    Horizon's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff and the Virginia Class, by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

124.    Plaintiff provided Horizon notice before the filing of this lawsuit. Horizon's breach of the promises and warranties entitle Plaintiff and the Virginia Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

**COUNT 4**
**Breach of Implied Warranty**
**(on behalf of the Nationwide  Class or alternatively on behalf of the Virginia**
**Subclass under Va. Code Ann. § 8.2-314)**

125.    Plaintiff restates and incorporates all other allegations in this Complaint.

126.    Plaintiff brings this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

127.    The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the good and are fit for the purposes underlying the goods sale.

128.    The purpose of these warranties is to protect consumers and consumers are the intended beneficiaries of those warranties, and the representations are made to facilitate Horizon's Treadmill sales by creating consumer demand and consumer purchases.

129.    Plaintiff, Class and Sublcass members are the intended beneficiaries of the implied warranty contract.

130.    Horizon is a merchant that sells Treadmills.

131.    The Treadmills are consumer goods.

132.    Horizon breached these implied contractual provisions because the Treadmills cannot perform as Horizon promised.

133.    Horizon breached these implied contractual provisions because the Treadmills do not conform to the promises and/or affirmations of fact made on the container or label as Horizon promised and/or affirmed.

134.    Horizon cannot provide a remedy or provide conforming goods because the motors used in the Treadmills inherently cannot provide the represented power in ordinary, sustained operation.

135.    Horizon's breach of the implied warranty of merchantability injured the Plaintiff and the Class and Subclass by providing Treadmills that could not do the work as warranted and caused Plaintiff and the Class and Subclass to pay a premium price for the Treadmills.

136.    Horizon's actions breach implied warranties due consumers.

137.    Horizon's breach entitles Plaintiff, the Class and Subclass to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform to the Treadmills' actual performance in the type of use for which they are intended.

## COUNT 5
### Breach of Implied Warranty — Magnuson-Moss Warranty Act
### (on behalf of the Nationwide Class
### or alternatively on behalf of the Virginia Subclass)

138.    Plaintiff restates and incorporates all other allegations in this Complaint.

139.    Plaintiff bring this claim on behalf of the Nationwide Class or, alternatively, the

Virginia Subclass pursuant to Rule 23 of the Federal Rules of Civil Procedure.

140.    The Treadmills are consumer products within the meaning of 15 U.S.C. § 2301(1).

141.    Plaintiff, the Class and the Subclass are consumers within the meaning of 15 U.S.C.

§ 2301(3) because they are persons entitled under applicable state laws to enforce against the

warrantor the obligations of its express and implied warranties.

142.    Horizon are and was a supplier of consumer products and a warrantor within the

meaning of 15 U.S.C. §§ 2301(4) and (5).

143.    15 U.S.C. § 2310(d) is satisfied because Plaintiff properly invokes the jurisdiction

of this Court under CAFA.

144.    This same section—15 U.S.C. § 2310(d)—provides a cause of action to any

consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

145.    Horizon made implied warranties regarding the Treadmills to Plaintiff, the Class

and the Subclass within the meaning of 15 U.S.C. § 2301(7). Horizon provided Plaintiff and other

Class and Subclass members an implied warranty of merchantability within the meaning of 15

U.S.C. § 2301(7).

146.    Horizon breached the implied warranty of merchantability because the Treadmills

do not—and cannot—perform as promised or affirmed at the 2.5 CHP to 4.0 CHP representations

of the Treadmills during household operation. Specifically, the Treadmills do not—and cannot—

produce the power expected of a 2.5 CHP to 4.0 CHP during ordinary household use.

28

147.    As a direct and proximate result of Horizon's breach of the warranties regarding the CHP representations, Plaintiff, individually and on behalf of the Class and Subclass, has been damaged. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff, the Class and Subclass are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff, the Class and Subclass in connection with the commencement and prosecution of this action.

148.    Furthermore, Plaintiff, the Class and Subclass are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Horizon's violation of its implied warranties.

## COUNT 6
### Constructive Fraud
### (on behalf of a Virginia Class)

149.    Plaintiff restates and incorporates all other allegations in this Complaint.

150.    Plaintiff and the Virginia Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

151.    In the course of business, Horizon misrepresented, whether innocently or negligently, that the Treadmills maintain a CHP output that they cannot accomplish while in household use.

152.    Horizon supplied the Plaintiff and Class members false and misleading information that a reasonable consumer would have used as guidance in evaluating the Treadmills' horsepower capabilities.

153.    At the time Horizon made these misrepresentations of material facts, Horizon should have known that these CHP representations were false and misleading.

29

154.   Horizon negligently misrepresented and/or, at a minimum, negligently omitted material facts concerning the Treadmill power representations, namely its true CHP capabilities while in operating use.

155.   The misrepresentations and omissions made by Horizon, upon which Plaintiff, Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff, Class and Subclass members to purchase or pay a premium price for the Treadmills.

156.   Plaintiff, Class and Subclass members maintained an asymmetrical bargaining power which weighed heavily in favor of Horizon, who is a large corporate entity and maintained exclusive control over the actual horsepower capabilities of the Treadmills.

157.   Plaintiff, Class and Subclass members would not have purchased the Treadmills or would have paid considerably less, if the true facts concerning the CHP claims had been known.

158.   Horizon's deceitful actions have caused damage to Plaintiff, Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result of Horizon's misrepresentations.

**COUNT 7**
**Virginia's Consumer Protection Act; Va. Code Ann. §§ 59.1-198, -200**
**(on behalf of the Virginia Class)**

159.   Plaintiff, individually and on behalf of the Virginia Class, restates and incorporates all other allegations in this Complaint.

160.   Plaintiff and members of the Virginia Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

161.   Plaintiff and members of the Virginia Class are consumers within the meaning of the Virginia's Consumer Protection Act; Va. Code Ann. §§ 59.01-198, -200 (the "Virginia Act").

162.    The Virginia Act expressly prohibits "Misrepresenting that goods or services are of a particular quality standard, quality, grade, style or model" and/or "Using any other deception, fraud, false pretense, false promise or misrepresentation in connection with a consumer transaction." Virginia Act, at § 59.1-200(5) and (14):

163.    Horizon engages in "trade" and "commerce" generally and as it pertains to the Treadmills' distribution for sale to consumers within various states.

164.    Horizon places continuous horsepower ratings on the Treadmills' boxes and in point-of-sale materials supplied to retailers.

165.    The continuous horsepower promises and representations are misleading and deceptive for the reasons discussed herein.

166.    Horizon's representations regarding the Treadmills "continuous" horsepower are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

167.    Horizon understood and intended that the representations about the Treadmills' horsepower would influence consumer behavior.

168.    Horizon understands it has an obligation to ensure the honesty of all promotions and avoid misleading the public regarding its products.

169.    Horizon's misleading horsepower statements in point-of-sale materials, on boxes and on its website constitute unfair methods of competition and unfair and/or deceptive acts or practices in the conduct of trade or commerce for treadmill sales to consumers.

170.    Horizon's acts and practices offend public policy as established by statute.

171.    Horizon's acts and practices are immoral, unethical, oppressive and unscrupulous.

172.    Horizon's conduct substantially injured actual and potential consumers, the public and competition in each of the states in which the Treadmills were sold.  As Horizon knows,

Plaintiff, Virginia Class members, and consumers would not pay the prices they paid absent Horizon's false and misleading horsepower representations.

173.    Horizon's conduct materially affected available information regarding its products to consumers nationwide and in each state in which the Treadmills were sold.  Horizon's conduct thus improperly distorted the information available to the public regarding the Treadmills.

174.    Horizon's actions caused consumers to overpay for the Treadmills. These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from Horizon's misconduct.

175.    Horizon's actions involved information material to Treadmill purchases. The misleading nature of the promise or affirmations on the box, at the point of sale, online, and other similar representations, and the failure to include necessary explanatory information regarding such representations, were material to the price at which consumers purchased the Treadmills.

176.    Because the representations about Treadmill CHP involve technical information that an ordinary consumer could not readily test, consumers could not have reasonably avoided the losses caused by misrepresentations forming the basis for the Treadmills' prices.

177.    Plaintiff and the Virginia Class purchased the Treadmills for personal, family or household use.  Thus, the practices discussed above constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the Virginia Act.

178.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff and the Virginia Class to suffer ascertainable losses when they paid a premium for the Treadmills above and beyond what they should have paid and provided Horizon more in revenues for the Treadmills than it could have received absent its false and misleading representations.

179.   Plaintiff and the Virginia Class are entitled to recover damages and other appropriate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

1.   Certify the proposed Class and Subclass and appoint Plaintiff and their legal counsel to represent the Class and Subclass;

2.   Find in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

3.   Declare that Horizon's conduct violated the statutes referenced herein;

4.   Award damages, including compensatory, exemplary, and statutory to Plaintiff, the Class, and the Subclass in an amount to be determined at trial;

5.   Grant restitution to Plaintiff, the Class, and the Subclass and require Horizon to disgorge its ill-gotten gains;

6.   Award Plaintiff, the Class, and the Subclass punitive damages in an amount to be determined at trial;

7.   Award Plaintiff, the Class, and the Subclass reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

8.   Enjoin Horizon from future misrepresentations regarding the horsepower of its Treadmills;

9.   Award Plaintiff, the Class, and the Subclass pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

10.   Order any such other and further relief the Court deems just and equitable.

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all counts herein and of all issues so triable.

Respectfully submitted,

July 5, 2022

*/s/ _Mark B. Holland*

**HAYMORE & HOLLAND, P.C.**
Mark B. Holland
VSB #:32940
219 Patton Street
Danville, VA 24541
Telephone: (434) 793-8378
Facsimile:  (434) 793-8886
*mark@haymorehollandlaw.com*

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger*
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
*gklinger@milberg.com*
*admitted *pro hac vice*

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Nick Suciu III^
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
*nsuciu@milberg.com*

**MARKOVITS, STOCK & DeMARCO, LLC**
W.B. Markovits^
Terence R. Coates^
Justin C. Walker^
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile:  (513) 665-0219
*bmarkovits@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

*^pro hac vice forthcoming*

*Counsel for Plaintiff, the Class, and the Subclass*

34

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this day he filed the foregoing document with the Court's CM/ECF system in accordance with LR 7(g).

Additionally, the undersigned attorney also certifies that on this day he emailed the foregoing document to counsel for the defendants Kenneth M. Albridge III, at kmalbridge@michaelbest.com          .

This the 5th day of July, 2022.
HAYMORE & HOLLAND, P.C.

/s/ Mark B. Holland
Mark B. Holland
VSB #32940
mark@haymorehollandlaw.com
219 Patton Street
Danville, VA  24541
Telephone: (434) 793-8378
Facsimile:  (434) 793-8886

Counsel for Wendy Prince, individually
and on behalf of all others similarly situated