IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| WENDY PRINCE, individually, and on behalf of all others similarly situated, </br></br>    Plaintiff, </br></br>v. </br></br>JOHNSON HEALTH TECH TRADING, Inc., JOHNSON HEALTH TECH RETAIL, Inc., and JOHNSON HEALTH TECH, Inc., </br></br>    Defendants. | Civil Action No. 5:22-cv-00035 </br></br> By: Elizabeth K. Dillon </br>    United States District Judge |

**MEMORANDUM OPINION**

This is a putative class action brought by plaintiff Wendy Prince, on behalf of herself and similarly situated purchasers of Horizon Fitness treadmills. (First Am. Class Action Compl. (Compl.), Dkt. No. 7.) Defendants Johnson Health Tech Trading, Inc., Johnson Health Tech Retail, Inc., and Johnson Health Tech, Inc. (collectively referred to as Johnson Health or Horizon), move to dismiss for failure to state a claim and lack of subject matter jurisdiction. (Dkt. No. 16.) The court held a hearing on this motion on December 15, 2022. (Dkt. No. 42.)

For the reasons stated below, defendants' motion will be granted in part and denied in part.

I. BACKGROUND

The amended class action complaint alleges that the subject treadmills are incapable of reaching and maintaining Horizon's continuous horsepower (CHP) representations during normal designed household exercise use. (Compl. ¶ 1.) Treadmill horsepower rating is a prevalent and recognized specification used by consumers when purchasing a treadmill. (*Id.* ¶ 2.) Horizon misled consumers into believing that the treadmills generate and maintain the

represented CHP, even though the represented horsepower can never be obtained during actual household use by plaintiff and the class and subclass members. (*Id.* ¶ 3.)

Horizon marketed and sold the treadmills as maintaining a certain "continuous horsepower" or "continuous duty horsepower." CHP is a measurement of the motor's ability to maintain and continuously produce power over an extended period of time without exceeding the current rating of the motor. (*Id.* ¶ 36.) Horizon's treadmills are only capable of producing a fraction of the misrepresented CHP due to the treadmill's onboard electrical circuit breaker, as well as the electrical limits commonly found in households throughout the United States. (*Id.* ¶ 34.)

Plaintiff purchased a Horizon 7.8 AT Treadmill online directly from Horizon's website on or about November 9, 2020, for the purpose of using the treadmill at her home located in Shenandoah, Virginia. (*Id.* ¶ 19.) Horizon's website noted that the 7.8 AT Treadmill delivered 4.0 CHP, but plaintiff has not received the CHP that Horizon represented. (*Id.*) Plaintiff paid $1,999.00 for the treadmill. (*Id.* ¶ 21.) Plaintiff would not have purchased her treadmill, or would have paid considerably less, if she had known its true horsepower capabilities. (*Id.* ¶ 20.)

Plaintiff brings this action on behalf of herself and a nationwide class defined as follows:

> All persons in the United States who purchased a Horizon treadmill, during the maximum period of time permitted by law, for personal, family, or household purposes, and not for resale.

(*Id.* ¶ 61.) Plaintiff also brings this action on behalf of a Virginia-statewide class (Virginia subclass) defined as follows:

> All persons in the State of Virginia who purchased a Horizon treadmill, during the maximum period of time permitted by law, for personal, family, or household purposes, and not for resale.

(*Id.* ¶ 62.) Plaintiff brings claims for (1) breach of express warranty (nationwide class); (2) breach of express warranty—Magnuson-Moss Warranty Act (MMWA); (3) breach of express warranty (Va. Code § 8.2-313) (Virginia subclass); (4) breach of implied warranty (nationwide class or alternatively, Virginia subclass pursuant to Va. Code § 8.2-314); (5) breach of implied warranty—Magnuson-Moss Warranty Act; (6) constructive fraud (Virginia subclass); and (7) Virginia Consumer Protection Act (VCPA) (Va. Code § 59.1-198, -200) (Virginia subclass).

I. ANALYSIS

**A. Rule 12(b)(1)—Motion to Dismiss for Lack of Subject Matter Jurisdiction**

When a motion is filed pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, that subject matter jurisdiction exists. *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). In considering a facial challenge to subject matter jurisdiction, the court accepts all of the facts alleged in the complaint as true. *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018). A district court should grant a motion to dismiss for lack of subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018).

**1. Standing**[1]

To establish standing, a plaintiff must first demonstrate an "injury-in-fact," which is "an invasion of a legally protected interest" that is "concrete and particularized," and is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

---

[1] One of defendants' standing arguments is that plaintiff does not have standing to pursue her claims for injunctive relief. At the hearing, plaintiff indicated that she was withdrawing her claims for injunctive relief. Therefore, this aspect of defendants' motion will be granted.

3

Second, "there must be a causal connection between the injury and the conduct complained of," meaning that the injury must be "fairly traceable to the challenged action of the defendant." *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

Johnson Health argues that plaintiff does not have standing to assert claims related to treadmills she did not purchase. Plaintiff only bought one model of treadmill—the Horizon 7.8 AT Treadmill—but she seeks to expand her claims to encompass all Horizon treadmills. *See, e.g.*, *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) ("Plaintiff lacks Article III standing to bring claims on behalf of the Neutrogena products he did not purchase because he cannot conceivably allege any injuries from products that he never purchased or used."). The cases cited by Johnson Health represent the minority approach to this issue. There are three approaches. First, the majority view holds that a plaintiff has standing to represent a class where the products and alleged misrepresentations are substantially similar. *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012) (collecting cases and describing this as the "majority" approach). Second, the minority view holds that there is no standing to seek relief for a product not identical to the one the named plaintiff purchased. *See, e.g.*, *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015) (holding that a plaintiff had standing to challenge an allegedly false "all natural" label on four different flavors of chips that she purchased, but not on twelve other flavors that she did not purchase). Lastly, a third view holds that the issue is one appropriate at class certification with regard to typicality, not standing. *See Barclay v. ICON Health & Fitness, Inc.*, File No. 19-cv-2970 (ECT/DTS), 2020 WL 6083704, at *6 (D. Minn. Oct. 15, 2020) (*Barclay I*). One court explains that the majority approach is "more nuanced." *Id.*

In similar treadmill cases, courts have followed the majority approach and found that treadmill models are substantially similar for horsepower misrepresentation claims. *See, e.g.*, *Bechtel v. Fitness Equip. Servs., LLC*, 339 F.R.D. 462, 474–75 (S.D. Ohio 2021); *Barclay I*, 2020 WL 6083704, at *6. Also, a recent case from North Carolina suggests that the Fourth Circuit would follow the majority approach. *See Hill v. AQ Textiles LLC*, 582 F. Supp. 3d 297, 310–11 (M.D.N.C. 2022). The plaintiff in *Hill* challenged the defendant's alleged practice of advertising its sheets at higher thread counts than the sheets actually possessed. *Id.* at 311. The court rejected the defendant's argument that the plaintiff could not represent class members who bought different products as "inconsistent with Supreme Court and Fourth Circuit precedent." *Id.* at 310. The fact that the products purchased by the class members were of different names or sizes was immaterial, the court reasoned, because "the alleged injury and challenged conduct" was "uniform across the classes." *Id.* at 311.

The court agrees with the analysis in *Hill* that the Fourth Circuit is likely to follow the majority approach to this issue. Therefore, the court finds that plaintiff has standing to assert claims related to treadmills she did not purchase because the treadmill she purchased is substantially similar to all Horizon treadmills and her claims are substantially similar to those of the other class members.

### 2. Jurisdictional requirements of Magnuson-Moss Warranty Act (MMWA)

A plaintiff may file a MMWA suit for damages for certain breaches of warranty obligations in either state or federal court. Such a suit cannot be brought in federal district court under the following circumstances:

> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;

5

> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
>
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3). Although this is a class action, there is only one named plaintiff. Therefore, under § 2310(d)(3)(C), the MMWA does not provide the court with jurisdiction over this action.

Plaintiff relies instead on the Class Action Fairness Act (CAFA) for jurisdiction. *See* 28 U.S.C. § 1332(d). As relevant here, CAFA grants district courts with original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000," and is a class action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant," § 1332(d)(2)(A). Plaintiff is a citizen of Virginia, defendant is a Wisconsin corporation with its principal place of business in Wisconsin, and the amount in controversy exceeds $5 million in the aggregate. (Compl. ¶ 17.)

At least one court of appeals has held that the MMWA requirements must be met separately from CAFA's jurisdictional requirements. *See Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1032–35 (9th Cir. 2020) (holding that CAFA "may not be used to evade or override the MMWA's specific numerosity requirement"); *Cohen v. Subaru of Am., Inc.*, No. 1:20-cv-08442, 2022 WL 721307, at *9 (D.N.J. Mar. 10, 2022); *Stevens v. Ford Motor Co.*, No. 2:18-cv-456, 2020 WL 12573279, at *13–14 (S.D. Tex. Nov. 2, 2020). However, most courts, including those within Fourth Circuit, have held that a class action based on violations of the MMWA may be brought under CAFA even if it may not be brought directly under the MMWA. *See, e.g., Chavis v. Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 626 (D.S.C. 2006) (concluding that class claims under the MMWA do not require 100 or more named plaintiffs if CAFA is

6

satisfied); *Barnes v. West, Inc.*, 249 F. Supp. 2d 737, 739 (E.D. Va. 2003) (concluding that the MMWA's jurisdictional requirements are irrelevant when another basis for jurisdiction exists). Courts have also rejected the *Floyd* decision in analogous cases involving treadmill horsepower misrepresentations. *See Barclay I*, 2020 WL 6083704, at *7 (rejecting *Floyd* and holding "the better answer is that once plaintiffs have satisfied CAFA, the MMWA's additional requirements do not apply").

Congress' purpose in enacting CAFA was "to expand subject matter jurisdiction in the federal courts." *See Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 329–30 (4th Cir. 2018). So, once CAFA's requirements have been satisfied, MMWA's additional jurisdictional requirements need not also be satisfied. Therefore, the court finds that it has jurisdiction under CAFA.

### B. Rule 12(b)(6)—Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017). Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). To survive a Rule 12(b)(6) motion, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570).

1. **Johnson Health Tech, Inc.**

Defendants argue that Johnson Health Tech, Inc., should be dismissed as a defendant because it does not exist. Plaintiff argues that there is an issue of fact as to whether this is an entity that may be subject to liability in this action. Plaintiff attaches two press releases that reference Johnson Health Tech, Inc. (Dkt. No. 22, Exs. A, B.) Plaintiff also cites correspondence among counsel where JHT, Inc. is referred to as a parent company. (*Id.* Ex. C.)

The court will not consider the exhibits because the motion to dismiss Johnson Health Tech, Inc. is a Rule 12(b)(6) motion, and the court must confine itself to the pleadings. However, at this stage, the court can only conclude that plaintiff has stated a claim against an entity called Johnson Health Tech, Inc. that may or may not be an existing legal entity. The status of Johnson Health Tech, Inc. as a viable defendant must be resolved through the discovery process.[2]

2. **MMWA express warranty claim (count two)**

Under the MMWA, a written warranty is defined as:

> Any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is [1] defect free or [2] *will meet a specified level of performance over a specified period of time.*

15 U.S.C. § 2301(6)(A) (emphasis added). Defendants argue that plaintiff's allegations are deficient because they do not identify a warranty that specifically identifies the duration of the

---

[2] As the court suggested at the hearing on this matter, the parties should endeavor to resolve this issue in a manner that does not result in unnecessary cost and expense pursuant to Rule 1 of the Federal Rules of Civil Procedure, which provides that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

warranty—i.e., that the product "will meet a specified level of performance over a specified period of time." *Id.*

Plaintiff maintains that she has adequately pled the existence of a warranty that the product will meet a specified level of performance over a specified period of time. She alleges that the treadmill is expected to perform at a specific horsepower (i.e., 4.0 CHP) for a specific period of time (the entire workout, i.e., "continuous"), during each use of the machine (i.e., the machine's lifetime). *See, e.g.*, Compl. ¶¶ 36–41, 104–05, 116; ¶ 37 ("a 'continuous duty motor measures the minimum horsepower delivered at all points during a workout . . . .'"). Defendants argue that the representation of "lifetime" performance does not create a written warranty because it is an inherently imprecise measurement and therefore not a "specified period of time" under the MMWA. *Barclay v. Icon Health & Fitness, Inc.*, No. 19-cv-2970, 2022 WL 486999, at *4 (D. Minn. Feb. 17, 2022) ("*Barclay II*"); *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2007 WL 2600841, at *5 (W.D. Wash. Sept. 10, 2007) ("[T]he warrantor's guarantee must contain language that specifically identifies the duration of the warranty."). Plaintiff argues that the *Barclay II* case is distinguishable because this case has more specific allegations of the warranted period of time—for example, that the performance would last for an entire workout. Just like the representation of a lifetime warranty, a warranty that a specific horsepower would last the duration of a person's workout is "an inherently imprecise measurement," *Barclay II*, 2022 WL 486999, at *4, because people tend to work out for different amounts of time. Not every workout will be the same amount of time, and even if that were somehow true, plaintiff has not specified what that amount of time would be.

Because plaintiff's allegations of duration are inherently imprecise, the court will grant defendants' motion to dismiss this claim, with leave to amend.

9

### 3. State-law warranty claims (counts one, three, four)

In a breach-of-warranty action under Virginia law, a plaintiff must demonstrate that they gave notice to the seller "within a reasonable time after [s]he discover[ed] or should have discovered any breach . . . or be barred from any remedy." Va. Code § 8.2-607(3)(a). Plaintiff alleges that her April 7, 2022 notice letter was sent "within a reasonable time after she discovered or reasonably should have discovered that her Horizon treadmill did not produce the represented 4.0 CHP." (Compl. ¶ 80.) Plaintiff does not allege when she discovered the alleged breach.

Plaintiff argues that there is no case holding that she must plead the exact date she discovered her treadmill's inability to reach and maintain the warranted CHP to survive a Rule 12(b)(6) motion. One case specifically held that a plaintiff is not required to allege facts in the complaint demonstrating compliance with Virginia's notice requirement. *See Campbell v. Ethex Corp.*, 413 F. Supp. 2d 738, 738–40 (W.D. Va. 2006); *see also Hoffman v. Daimler Trucks N. Am., LLC*, 940 F. Supp. 2d 347, 360 n.14 (W.D. Va. 2013) ("The Court does not address Daimler's argument that the Amended Complaint does not allege that Daimler was given the required notice of the RV's defects . . . because a motion to dismiss is a premature stage to address this factual issue.").

Plaintiff has adequately pled notice simply by alleging that she provided pre-suit notice within a reasonable time of discovering the defect. (Compl. ¶¶ 79–80.) Therefore, the court will deny defendants' motion to dismiss plaintiff's state-law warranty claims.

### 3. Constructive fraud; VCPA (counts six and seven)

To state a claim for constructive fraud, plaintiff must allege: (1) a false representation of material fact; (2) innocently or negligently made; and (3) damage to the injured party as a result

of reliance on the misrepresentation. *Frank Brunckhorst Co., LLC v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008). To state a claim under the VCPA, plaintiff must allege a fraudulent act by a supplier in a consumer transaction. *Curtis v. Propel Prop. Tax Funding, LLC*, 2018 WL 717006, at *2 (E.D. Va. Feb. 5, 2018) (citing Va. Code § 59.1–200(A)). Both claims sound in fraud and therefore must be pled with particularity under Rule 9(b). *Xia Bi v. McAuliffe*, 927 F.3d 177, 184–85 (4th Cir. 2019); Fed. R. Civ. P. 9(b) (requiring that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake").

Plaintiff's misrepresentation theory relies on the allegation that the CHP rating achieved during lab testing conditions cannot be achieved in home use due to limitations in home electricity amperage. Defendants argue that these claims must be dismissed because plaintiff does not allege that Johnson Health specifically qualified its CHP rating as applicable to home use or that it could be achieved in home use. (Compl. ¶¶ 45–59.)

Plaintiff argues that she has met the heightened pleading standard of Rule 9(b), citing several paragraphs from the amended complaint. (*See* Compl. ¶¶ 2, 3, 9, 12, 15, 20, 21, 31, 34, 35, 42, 45, 46, 47, 48, 49, 50, 51, 52, 55, 56.) The complaint alleges, generally, that defendants, suppliers under the VCPA (who), made statements containing false representations about the horsepower of the treadmills (what), from the time the marketing of the treadmills began until the time that plaintiff gave notice of the deceptive nature of the marketing (what), online, in publications, through distributors and third-party retailers, and in stores (where), by repeatedly making the misleading statements to consumers like and including plaintiff (how). This is sufficient to meet the requirements of Rule 9. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (stating that the "circumstances" required to be pled with

11

particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby").

Finally, defendants argue that plaintiff's constructive fraud claim is barred by the economic loss rule. *See Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004). But it is a claim for negligence that cannot survive the rule. *Richmond Metro Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). While the economic loss rule may prohibit a constructive fraud claim which "essentially alleges negligent performance of contractual duties," it will not bar a constructive fraud claim which goes beyond mere "disappointed economic expectations assumed only by agreement." *Filak*, 594 S.E.2d at 612–13. Plaintiff describes herself and others similarly situated as more than disappointed consumers but, instead, as victims of an unlawful scheme of false advertising and misrepresentation.

The court finds that plaintiff has plausibly alleged a claim that may not be barred by the economic loss rule. Therefore, the court will deny defendants' motion to dismiss this claim.

### III.  CONCLUSION

For the foregoing reasons, the court will issue an order granting in part and denying in part defendants' motion to dismiss.

Entered: January 31, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge